MOORE et al. v. SOUTHERN STATES LAND & TIMBER CO. (McDONNELL et al., Interveners).

(Circuit Court, S. D. Alabama. July 27, 1896.)

No. 196.

1. INSOLVENT CORPORATION—RECEIVERSHIP—JUDGMENT CREDITORS—NOTICE TO FILE CLAIMS—PRIORITY.

In a suit to foreclose a mortgage, and also for the administration of the assets of the mortgagor, an insolvent corporation, a receiver of all its property was appointed, a decree pro confesso entered, and a reference made to a master; but it was only by the decree as subsequently amended that the court first showed its ulterior intent to make an equitable distribution of the funds among all the creditors, and provided for notice to them to file their claims. *Held*, that until the amended decree the creditors were entitled to sue at law, and by judgment acquire a priority in the equitable distribution of the property, other than that covered by the mortgage, over less diligent creditors.

2. MORTGAGE—MORTGAGOR'S RIGHT TO REMOVE TIMBER.

A provision in a mortgage of timber lands, by which the mortgagor reserves the right to enjoy the premises, receive the profits, and let, deal with, and manage the same in the ordinary course of business, authorizes him, in accordance with such ordinary course, to cut and remove logs, manufacture lumber from them, and give good title to a purchaser of the lumber.

This was a suit in equity by George H. Moore and others against the Southern States Land & Timber Company, in which James McDonnell and others intervened. The cause was heard on exceptions filed by the interveners to the special master's report.

Leopold Wallach, King & Spalding, Bestor & Gray, and Blount & Blount, for complainants.

Gregory L. & H. T. Smith and John C. Avery, for interveners.

TOULMIN, District Judge. The bill in this case is not strictly or technically a general creditors' bill. Primarily, it is a bill for the foreclosure of a mortgage; but it avers the insolvency of the defendant corporation, and prays for a foreclosure of the mortgage, a marshaling of the assets of the corporation, and an ascertainment of its debts, and that the court will sell the property as an entirety (that uncovered as well as that covered by the mortgage lien), because its value largely depends on its "unity and integrity," and further prays that the court will administer the estate as a trust for the benefit of all parties interested therein, according to their equities and priorities. In short, the bill is for a foreclosure, and for the administration of the assets of an insolvent corporation. These are functions of a court of equity, and I think the bill is sufficient to enable the court to administer the property of the defendant, and to marshal its debts; making proper parties before adjudging the merits of the cause. Union Trust Co. v. Illinois M. Ry. Co., 117 U. S. 459, 6 Sup. Ct. 809. The court, having jurisdiction of the subject-matter, has adjudicated the insolvency of the corporation by the decree pro confesso rendered in the cause, and it will administer the property and marshal the debts; making proper parties in due time, and before adjudging the merits of the case. So long as a corporation has not been declared insolvent, and no injunction or order of the court exists, restraining the bringing of suits against it, it can still be sued; but no person can acquire any lien upon the property of the corporation, by judgment, execution, or attachment, after the property has passed into the hands and possession of a receiver, without leave of the court appointing him. Gluck & B. Rec. pp. 131, 132, and note. It has, however, been held that when a decree appointing a receiver and awarding an injunction, so far as disclosed upon its face, was to provide for the safe-keeping of the property of the corporation, and to prevent any transfers thereof, and such decree did not state that the ulterior intent of the court was to make an equitable distribution of the funds, and contained no direction to the receiver to give notice to the creditors to file their claims, the decree imposed no restrictions upon creditors in prosecuting their claims, either at law or in equity, and a judgment subsequently recovered by a creditor is as much a lien on the real estate of the corporation debtor as if the appointment of a receiver had never been made. Gluck & B. Rec. p. 24, § 7; High, Rec. p. 310, § 349; Ellicott v. Insurance Co., 7 Gill, 307. I think this ruling is founded in reason, and my opinion is that until the court has made some decree showing that its ulterior intent is to make an equitable distribution of the funds, and giving notice

to the creditors to file their claims, such creditors may sue at law, and acquire a priority. Up to that time the complainant is permitted to dismiss the case and discharge the receiver.

1. The court will recognize the priority of those judgment creditors who have obtained judgments prior to the decree pro confesso rendered in the cause, and who would have obtained, by the levy of an execution, such priority, if no obstacles had stood in the way of the levy of such process by the action of the court in its appointment of receivers to take possession of the property of the defendant. George v. Railway Co., 44 Fed. 117. And the court holds that the interveners whose judgments were recovered before the decree, though after the appointment of receivers, shall have a lien upon all the property and effects of the defendant not covered by the mortgage, and in the hands of the receivers, and recognizes the right in the said interveners, paramount to the other creditors, to be paid out of such property and effects. The lien is not one that can be enforced or perfected by an execution, because of the rule that a judgment recovered after the appointment of a receiver does not become a lien upon property in his hands, but it is such a lien as will be recognized in equity. The petitions herein were filed before any order calling creditors in to establish their claims, and before any decree pro confesso against the defendant was rendered, and its insolvency adjudicated, and the judgments set up were all obtained prior thereto. Jackson v. Lahee, 114 Ill. 297, 2 N. E. 172.

2. The court holds that the logs cut from the lands covered by the mortgage, and removed to the mills, and the lumber manufactured from such logs, are not covered by the mortgage lien. By the terms of the mortgage the defendant had the right "to enjoy the mortgage premises, and to receive the profits thereof, and to let, deal with, and manage the same in the ordinary course of business," which was to cut and remove the logs to the mills, to manufacture lumber from them, and to pledge or sell that lumber. The purchaser of such lumber acquired a good title to it. The title to the logs from which the lumber was made must then have been in the corporation, to enable it to so use and deal with them; and in the exercise of its right, or claim of right, to do this, an injunction to prevent waste could not have been maintained against it. Angier v. Agnew, 98 Pa. St. R. 587; Jones, Mortg. § 4578; 1 Hil. Mortg. p. 226, note A. So far as the lumber is concerned, I think the proposition is clear, and beyond question. So far as the unmanufactured logs are concerned, I am not so free from doubt. But I now make the same ruling as to both.

The exceptions to that part of the master's report finding that petitioners have no lien, nor right to priority of payment out of the property and effects of defendant not covered by the mortgage, are sustained. The exceptions to that part of the report finding that the logs and lumber are covered by the mortgage lien are sustained, and the exceptions to that part of the report finding that railway equipments are covered by the mortgage are sustained. The exceptions to that part of the report finding that the mills, etc., at Millview, Fla., are covered by the mortgage, are overruled.

83 F.—26

## On Exceptions to Report of Special Master Richard Jones.

(February 4, 1897.)

At the last term of the court, when this cause came on to be heard on the exceptions to the report of Special Master Mitchell, the court decided that it would recognize the priority of those judgment creditors who had obtained judgments prior to the decree pro confesso rendered in the cause, and who would have obtained, by the levy of an execution, a priority, if no obstacles had stood in the way of the levy of such process by the action of the court in its appointment of receivers to take possession of the property of the defendant, and held that until the court had made some decree showing that its ulterior intent was to make an equitable distribution of the funds of the defendant among its creditors, and gave notice to them to come in and file their claims, such creditors might sue at law and acquire a priority, and that the court would recognize the priority of those creditors who obtained such judgments and executions prior to the decree pro confesso over other creditors who were less diligent.    The opinion filed in connection with this ruling was prepared in some haste, and amid the pressure of other duties, as stated at the time; and it seems not to have been sufficiently explicit to prevent misapprehension, and perhaps to have been misleading or misunderstood.    The points now presented and argued are the same as were raised on the former hearing.    I wish now to state that the decree pro confesso referred to in the former opinion was the decree rendered in the cause on May 20, 1896.    On November 4, 1895, the plaintiff entered an order in the order book that the bill be taken pro confesso.    On May 20, 1896, the court proceeded to a decree; reciting the decree pro confesso of November 4, 1895, and making a reference to Special Master Jones to ascertain and report the number and amount of outstanding and unpaid debentures issued by the defendant, and secured by the deed of trust, and the owners of said debentures.    On June 18, 1896, the decree of May 20th was amended by ordering the master to ascertain and report the names of all creditors of the defendant, and the amount due to each, and whether any of the creditors claim a lien upon any of the property, and upon what property such lien is claimed, and the manner in which it is claimed, and ordering him to give notice calling upon all creditors, other than the debenture holders, to present their claims to him, as master, on or before a certain day, to be named in said notice.    In connection with the statement in my former opinion that, until the court made a decree giving notice to the creditors to present their claims, they might sue and acquire priorities, I referred to the decree pro confesso (meaning the decree of May 20, 1896), on the idea or assumption that it provided for such notice.    This was an inadvertence or error on my part.    The decree of May 20th did not provide for such notice until amended by the decree of June 18th.    According to my view then, this last decree was the limitation within which creditors might have prosecuted their claims to judgment, and have acquired a right of priority.    The court, on further consideration, still holds

that such judgment creditors are entitled to an equitable lien on the property of the defendant not covered by the deed of trust, and which was in the hands of the receivers at the time the judgments were obtained, and to priority of payment out of said property over the simple contract creditors. Such lien is not a common-law or statutory lien,—a lien that can be enforced or perfected by an execution, because of the rule that a judgment recovered after the appointment of a receiver does not become a lien upon property in his hands,—but such a lien or priority as exists in equity, and of which courts of equity take cognizance in the distribution of a trust fund.

The accounts, bills receivable, and cash in the hands of the receiver, as reported by the master, were not subject to levy and sale under execution, and no lien could have been acquired on them by a judgment and execution at law. No other proceedings were taken by the interveners to subject them, or to obtain a lien on them.

The exceptions of the interveners to the master's report relative to the claims of the judgment creditors Charles Seales and J. J. Fitzgerald are sustained. All other exceptions of interveners and the exceptions by the complainants to said report are overruled, and the additional exceptions numbered 12, 13, and 16, to said report, filed by the complainants, are also overruled. All other additional exceptions filed by the complainants are sustained. A decree will be entered in accordance herewith.