LENA MONTAGNE et al., Appellants, v. CHEROKEE COUNTY et al., Appellees.

**INSANE PERSONS: Judgment—When Voidable Only.** A default
1    judgment, even though procured by fraud not going to the jurisdiction of the court, against an insane person on personal service, and without the appointment of a guardian ad litem, is not void, but voidable only.

**JUDGMENT: Vacation—Fatal Delay.** A judgment against an insane
2    person may not be vacated, under the statute, Sec. 12790, because of erroneous proceedings or fraud not going to the jurisdiction of the court, when the proceedings to vacate are delayed beyond one year after the death of the insane person.

**JUDGMENT: Vacation—General Equitable Jurisdiction.** After the ex-
3    piration of the one year for vacating a judgment, as provided by statute, Sec. 12790, a court of equity will not decree a vacation, under its general equitable power, when it is made to appear that complainant has had, from the inception of the judgment, full knowledge of the grounds for the vacation.

**INSANE PERSONS: Deed—Effect.** Principle reaffirmed that a deed of
4    conveyance by an insane person is not necessarily void.

Headnote 1:  32 C. J. p. 789.  Headnote 2:  32 C. J. p. 790.  Headnote
3:  32 C. J. p. 791.  Headnote 4:  32 C. J. p. 789.

*Appeal from Cherokee District Court.*—WILLIAM HUTCHINSON, Judge.

SEPTEMBER 29, 1925.

ACTION in equity begun August 24, 1911, to set aside certain judgments, sheriff's sales and deeds, and quiet title in the

plaintiffs to 80 acres of land designated as the north half of the northeast quarter of Section 2, in Township 90 north, Range 42 west of the 5th P. M., in Cherokee County, Iowa. The grounds urged for equitable relief are the insanity of plaintiffs' ancestor during the time the events of which they complain took place, and fraud on the part of county officials, especially the county attorney, in procuring the judgments, executions, and sales of the land, with knowledge of the alleged insanity. The trial court entered a decree for the defendants, and the plaintiffs appeal.—*Affirmed.*

*William Mulvaney,* for appellants.

*Herrick & Herrick,* for appellees.

DE GRAFF, J.—The facts out of which the issues arise may be briefly stated. It is undisputed that John George Montagne, plaintiffs' ancestor, was the rightful owner of the land in con-

1. INSANE PERSONS: judgment: when voidable only.

troversy on June 29, 1900. On that date he was adjudged insane by the commissioners of insanity of Cherokee County, and committed to the hospital for the insane at Clarinda. He was discharged as cured October 3d following, and a certificate issued by the superintendent of said institution, attesting his belief that Montagne was restored in mind. This certificate was filed in Cherokee, August 5, 1901. On August 8, 1901, Cherokee County, by J. W. Dailey, its county auditor, brought an action against John George Montagne, to recover the sum of $132.05, with interest thereon, as expenses incurred by the county resulting from Montagne's insanity. He was served personally as though *sui juris,* and no guardian *ad litem* was appointed. Upon his failure to appear, judgment by default was rendered against him. Thereafter, execution was levied on the east half of the land now in controversy, and it was sold to the county by the sheriff for the sum of the judgment, interest, and costs. The right of redemption was not claimed, and on March 12, 1904, a sheriff's deed was executed to the county.

By warranty deed, executed and recorded December 17, 1902, John George Montagne and wife conveyed the 80 acres

in question to their son, Henry Montagne. November 1, 1904, Cherokee County recovered a judgment against Henry Montagne in the sum of $120, interest and costs of $6, in an action brought for rent due for use of the east 40 acres. This was also a default judgment, Henry having been served personally, and having failed to appear. Execution was levied on the west 40 acres of the land conveyed to Henry by his father, and it was sold, January 30, 1905, to J. A. Miller and O. E. Hess for $148.52, the amount of the judgment, interest, and costs. There was no redemption, and sheriff's deed was executed to the vendees, January 31, 1906.

February 1, 1906, Cherokee County quitclaimed the east 40 acres of said land to J. A. Miller, and on the same day, he quitclaimed a one-half undivided interest therein to O. E. Hess. June 6, 1906, J. A. Miller conveyed by quitclaim deed his undivided one-half interest in the land now in controversy to O. E. Hess, and June 8, 1906, O. E. Hess quitclaimed said land to E. E. Rowe, who claims to be a bona-fide purchaser for value, and without notice of any of the facts urged by plaintiffs to set aside his conveyance.

March 14, 1906, O. E. Hess and J. A. Miller brought an action in equity against John George Montagne and Henry Montagne, for the purpose of quieting their title to said land. Notice was served on both the defendants in that action personally, but, upon their failure to appear, a default decree was entered against said defendants, quieting title in plaintiffs. Thereafter, action in equity was brought by O. E. Hess and J. A. Miller against John George Montagne, Henry Montagne, John Montagne, and George Montagne for an injunction to prevent defendants from trespassing upon said land or interfering with plaintiffs' possession. Temporary injunction was issued and served on defendants. Personal service was made on the defendants in the original cause August 21, 1906. Defendants having defaulted, permanent injunction was ordered against them September 25, 1906. E. E. Rowe was substituted as plaintiff, and two of the defendants, Henry and George Montagne, were arrested and brought before the court on bench warrants, charged with contempt in violating the injunction. They were adjudged in contempt, and on promise that they would refrain from any

further interference with the land, they were released, upon payment of costs, April 4, 1907.

John George Montagne died June 12, 1907, and a paper purporting to be his will, executed June 2, 1907, was admitted to probate September 3, 1907. In an action to set aside the probate, brought by Lena Montagne Mileham, daughter of the deceased, the jury found, November 13, 1908, that the deceased was of unsound mind, and did not have testamentary capacity at the time of the execution and publication of said instrument. Judgment entered setting aside the alleged will was affirmed by the Supreme Court in *Mileham v. Montagne,* 148 Iowa 476.

It is earnestly contended by appellants that the judgments, decrees, and conveyances affecting title .to the land in controversy should be set aside, a decree entered finding their ancestor to have died seized of said land, and title to the same quieted in themselves. The grounds advanced for such decree are the alleged insanity of John George Montagne and the fraud chargeable to the county in securing judgment on a claim the greater part of which was invalid, against said Montagne, with a knowledge of his insanity on the part of the county officials, and especially on the part of the county attorney, who profited greatly by the various transactions. Considerable evidence was introduced to establish the insanity of Montagne,.. and it is contended that the record clearly shows that a fraud was perpetrated upon the court in securing the judgments complained of against him. But with the view we take of the case, it will not be necessary to determine either issue. It is argued that, since Montagne was not served with notice as provided by Section 3526 of the Code, 1897, and no guardian *ad litem* was appointed, according to Section 3485, judgment rendered against him was absolutely void. But the law is clearly otherwise. A judgment rendered against an insane person in a proceeding where jurisdiction is acquired by such service as would be valid but for defendant's insanity is, at most, voidable, and not void. The effect of insanity is to render the judgment subject to attack, provided that a prima-facie defense to the action is shown to have existed. The rule we here express is universally announced by the courts. *Lamprey v. Nudd,* 29 N. H. 299; *Atwood v. Les-*

*ter*, 20 R. I. 660; *West v. McDonald* (Ky.), 113 S. W. 872; *Heard v. Sack*, 81 Mo. 610; *Thomas v. Hunsucker*, 108 N. C. 720 (13 S. E. 221); *Denni v. Elliott*, 60 Tex. 337; *Dunn v. Dunn*, 114 Cal. 210 (46 Pac. 5); *Carroll Imp. Co. v. Engleman* (Iowa), 99 N. W. 574 (not officially reported); *Hawley v. Griffin*, 121 Iowa 667; *Watson v. Horner*, 178 Iowa 499; *Jones v. Schaffner*, 193 Iowa 1262. Nor is it material to the result that no appearance was made by or on behalf of the insane defendant, and judgment was rendered against him by default. *Hawley v. Griffin*, supra; *Watson v. Horner*, supra.

Fraud in procuring a judgment, where, as in this case, the fraud does not go to the jurisdiction of the court, has the same effect as insanity of the defendant. The judgment is rendered voidable, and not void. *Mahoney v. State Ins. Co.*, 133 Iowa 570; *Phelan v. Johnson*, 80 Iowa 727; *Bunch v. United States*, 164 C. C. A. 513 (252 Fed. 673); *Price & Beaird v. Eastland County Land and Abst. Co.* (Tex. Civ. App.), 211 S. W. 478.

It is further contended that all subsequent purchasers, including defendant E. E. Rowe, were chargeable with notice of the defect in the title, and therefore cannot assert the rights of bona-fide purchasers. Were this contention granted,—which, doubtless, is unavoidable, under the facts of the instant case,—we are unable to see how appellants' position is thereby strengthened. It will be admitted that none of the transactions subsequent to the judgment from which they derive their validity, and in which they acquired their inception, can be attacked without first vacating such judgment. If the judgments, therefore, involving the title to the property in question, cannot be disturbed, all the transactions following such judgments are now unimpeachable. In examining the status of the property in controversy with respect to the principles we have expressed, it will be convenient to consider separately the two 40-acre tracts which compose the land claimed by appellants. For the sake of brevity, these two portions will be designated as the east 40 and the west 40.

2. JUDGMENT: vacation: fatal delay.

(1) The east 40 was taken on execution, to satisfy a judgment against John George Montagne. Is this judgment now subject to attack? The considerations urged by appellants, that fraud was practiced by the county officials, and that defendant

was insane at the time, would merely render the judgment void-able. We have already cited the judicial authorities bearing upon these allegations. Furthermore, the Code of 1897 expressly specifies the grounds upon which a judgment may be vacated. The portions affecting the present controversy read as follows:

"Sec. 4091. Where a final judgment or order has been rendered or made, the district court, in addition to causes for a new trial hereinbefore authorized, may, after the term at which the same was rendered or made, vacate or modify the same or grant a new trial: * * *

"2. For fraud practiced in obtaining the same;

"3. For erroneous proceedings against a minor or person of unsound mind, when such errors or condition of mind do not appear in the record; * * *

"Sec. 4094. The application based upon the other grounds [which include 2 and 3 above] shall be by verified petition setting forth the judgment or order, the alleged facts or errors constituting a cause to vacate or modify it, and the matters constituting a defense to the action, if the party applying was a defendant. Such proceedings must be commenced within one year after the judgment or order was made, unless the party entitled thereto is a minor or person of unsound mind, and then within one year after the removal of such disability."

We have repeatedly held that the grounds upon which a judgment may be vacated either in law or equity must be found among those enumerated in the Code. *Lumpkin v. Snook,* 63 Iowa 515; *Jackson v. Gould,* 96 Iowa 488; *Ruppin v. McLachlan,* 122 Iowa 343; *Richards v. Moran,* 137 Iowa 220; *Yocum v. Taylor,* 179 Iowa 695. Granted that the allegations of appellants are sufficient to bring them within the provisions of the Code, it remains to be determined whether or not their action was timely brought. Judgment was rendered against John George Montagne, June 8, 1901. It being assumed, as contended by appellants, that he was insane at that time, and so continued until his death, the time fixed by the Code within which an action might be brought to vacate the judgment had expired. Montagne died June 12, 1907, and the present action was not commenced until August 27, 1911. The year had expired, and the

action was barred by statute, unless appellants can invoke the general equitable powers of the court to vacate the judgment. It is not denied that, upon a proper showing, the equitable jurisdiction of the court may be invoked after the time fixed by statute has passed. *Larson v. Williams & Betenbender,* 100 Iowa 110; *Tollefson v. Tollefson,* 137 Iowa 151; 34 Corpus Juris 547. But we find

3. JUDGMENT: va-
·cation: general
equitable juris-
diction.

nothing in the record to warrant the interference of equity to set aside the judgment. Not only were the facts now urged to prove defendant's insanity well known to appellants, but they were also well aware of the claims of the county. Some of the appellants lived on a farm adjoining the land in controversy, and even resisted all claims asserted under the judgments and executions. This resistance on the part of some of the appellants was so insistent that they were arrested on bench warrants for contempt of court. Under the undisputed facts, there is no ground upon which the equitable jurisdiction of the court can be invoked, and the judgment rendered against John George Montagne cannot now be disturbed.

(2)   The west 40 at first blush seems to involve a different principle. Both 40's were conveyed by John George Montagne and wife to their son, Henry, by warranty deed, December 17, 1902. It is contended that this deed was a nullity, and that consequently the execution levied upon the west 40 was invalid, and no

4. INSANE PER-
SONS: deed:
effect.

rights acquired thereby. In brief, although a judgment was rendered against Henry which may not now be attacked, yet the land levied upon in satisfaction of that judgment was still the property of John George Montagne. However, we have repeatedly held that the deed of an insane person is not void. The effect accorded it will depend upon the circumstances under which it was executed. *Ashcraft v. De Armond,* 44 Iowa 229; *Alexander v. Haskins,* 68 Iowa 73; *Kent v. La Rue,* 136 Iowa 113; 23 Corpus Juris 759. Under the view we take of the instant case, it is not necessary to determine whether or not the deed executed by Montagne and wife to their son, Henry, could have been set aside in equity. March 14, 1906, O. E. Hess and J. A. Miller brought an action in equity against John George Montagne and Henry Montagne, to quiet title to all the land in con-

troversy.  A decree quieting title was rendered in their favor, March 27, 1906.  Whatever equity held by John George Montagne to have the deed to his son set aside, was merged in the decree quieting title in Hess and Miller.  The insanity of John George Montagne, and that it continued until his death, being again assumed, the appellants are given one year thereafter, within which to bring their action to vacate the decree.  This was not done.  What we have said relative to the judgment against John George Montagne applies to this decree quieting title to the land in controversy.  This decree cannot now be disturbed.

The judgment and decree of the lower court must, therefore, be—*Affirmed.*

VERMILION and ALBERT, JJ., concur.

STEVENS, J., concurs in the result.

FAVILLE, C. J., takes no part.