MAT BRITTEN et al., Appellees, v. SHERIDAN OIL COMPANY et al., Appellees.

GRAVER CORPORATION, Appellant, v. JOSEPH P. HEALEY, Receiver, Appellee.

FEBRUARY 7, 1928.

*Kenneth H. Davenport*, for appellant.

*George A. Johnston*, for appellee.

KINDIG, J.—There is but one point here demanding our consideration. It involves the question as to whether or not, under the circumstances surrounding this litigation, a judgment lien can be established on real estate held by a "temporary receiver," so that, when coming into the possession of the "permanent receiver," afterwards appointed, said property will be thus impressed with this burden to the extent that the claimant must

be first paid by such officer from the moneys obtained through a sale of the realty.

Solution of that problem depends upon the following facts and circumstances:

January 13, 1925, appellant filed in the district court of Union County its petition at law, demanding of the Sheridan Oil Company, an Iowa corporation, $785.11, with interest and costs, for goods and merchandise had and received. Appearance was duly made by the defendant in that cause, and on July 14, 1925, final judgment was entered in favor of appellant for the amount asked. This was done without making the "temporary receiver," hereinafter named, a party to the suit.

However, before the conclusion of the above legal dispute, and during the pendency thereof, certain stockholders of the Sheridan Oil Company, on July 3, 1925, presented in the same district court their petition in equity against this oil company, its president and secretary, asserting the principal business of the institution to be the ownership and operation of certain oil and gas filling stations in Creston, and further declaring that: First, these officers had made a pretended conveyance of those assets; second, no annual meetings of stockholders had been held and no directors elected in four years; third, the defendant president was conducting the business as if it were his own personal affair; fourth, there had been delivered to another corporation the filling station, containing the main office; fifth, both real property and personal property were owned by the concern, but that the defendant "officers" had concealed the books and abandoned the property; sixth, dividends on preferred stock were in arrears; seventh, fraud was perpetrated against the stockholders through the transfer previously noted; eighth, permission to examine the records was refused persons interested therein; ninth, "personal property of the corporation" was likely to be lost or destroyed unless "a receiver be appointed" to take custody of it, because no "officer" or employee was in charge; tenth, the plaintiffs were unable to hold a stockholders' meeting to elect "officers" until access was gained to the books; and eleventh, the corporation was insolvent.

Succeeding these averments, prayer was made for the following redress: (a) A "temporary receiver" to take charge of the business and property, including the books and records; (b)

an accounting; (c) continuation of the "receivership" upon final hearing, until, first, the annual meeting of the stockholders, and second, directors could be elected to take charge of the business; and (d) general equitable relief.

Thereupon, during the same day, the district court, without notice to anyone, named a "temporary receiver" "to take charge of the books, papers, and records and all other property belonging to the Sheridan Oil Company and to hold the same subject to the further order of the court." Qualification by this official agent resulted immediately.

Without change, the matter there rested until November 9, 1925 (the judgment first above mentioned was entered on the Law Docket July 14th), when final decree was rendered in the equity case as follows:

"The court finds that the plaintiffs are entitled to have a receiver appointed by the court to take charge of the affairs of said corporation, as prayed in said petition. It is therefore ordered and adjudged that the temporary receivership be made permanent."

Nothing is therein contained concerning the insolvency of the business establishment, nor is there authority granted or direction given that its affairs be wound up or assets distributed. Noteworthy, too, is the fact that there is absent an order to bring creditors into the "proceedings."

Later, it appears that certain lots of the Sheridan Oil Company in west Creston had been sold under execution, to satisfy a judgment of one Harry F. Darell, and were subject to an outstanding certificate of tax sale. So, to avoid loss of the premises thereunder, a stipulation was entered into between appellant and appellee, as receiver, to the effect that said holdings of the oil company be placed upon the public market, and the proceeds received therefrom impressed with appellant's lien, if any. Accordingly, on the 29th day of May, 1926, upon application therefor, judicial order was made, granting the authority. Contained therein was the following paragraph:

"It is further ordered that the claims of all the general creditors against the Sheridan Oil Company, duly authenticated and sworn to, be filed with the clerk of the district court of this county within three (3) months from the date of this order, and that notice to said creditors to file claims be published once

each week for two consecutive weeks in the Creston Daily Advertiser.''

That is the first indication of a purpose and intent to transform the ''proceedings'' into a dissolving and liquidating process.

Conforming to previous directions, the ''receiver'' converted all the ''property'' into cash, and ''claims'' were filed, as indicated, including which was that of appellant, in the nature of a preference under the foregoing ''judgment lien;'' but the latter was disallowed as a superior demand, and established as general only. To correct this alleged error, appellant appealed.

I.   Appellee, to sustain the judgment and decree of the district court, argues that the ''property'' of the Sheridan Oil Company was *in custodia legis* for the purpose of administration, and therefore no creditor who afterwards obtained a judgment against such corporation acquires any lien on its ''real estate'' in the hands of the ''receiver,''—citing in support thereof *Smith v. Sioux City Nursery & Seed Co.*, 109 Iowa 51; *Bank of Bethel v. Pahquioque Bank*, 81 U. S. 383 (20 L. Ed. 840) ; *Watkins v. Minnesota Thresher Mfg. Co.*, 41 Minn. 150 (42 N. W. 862) ; *Fidelity Ins. Tr. & S. D. Co. v. Roanoke Iron Co.*, 80 Fed. 439 ; *Clyde v. Richmond & D. R. Co.*, 56 Fed. 539 ; *Temple v. Glasgow*, 25 C. C. A. 540 (42 U. S. App. 417, 80 Fed. 441) ; 34 Cyc. 231; 34 Cyc. 199, Notes 9 and 10.

While, on the other hand, appellant discriminates between those authorities and the case at bar, on the theory that the decree appointing ''the temporary receiver'' did not state the ulterior intent of the court to be an appropriation and equitable distribution of the corporation's funds in a final administration of its affairs; and in support of this position it relies upon *Ellicott v. United States Ins. Co.*, 7 Gill (Md.) 307 ; *Moore v. Southern States L. & T. Co.*, 83 Fed. 399 ; *Johnson v. Garner*, 233 Fed. 756 ; *West Virginia U. Co. v. Dura Glass Mfg. Co.*, 99 W. Va. 193 (128 S. E. 86) ; High on Receivers (4th Ed.), Section 349 ; 1 Tardy's Smith on Receivers (2d Ed.) 110, Section 29, note ; 2 Freeman on Judgments (5th Ed.) 2101, Sections 1010, 2103, Note 7 ; 23 Ruling Case Law 48 ; 34 Cyc. 199, Note 12.

II.   Abandonment of corporate assets by its officers, destruction or concealment of its books, cessation of business transac-

tions, failure to hold elections, and neglect to account are not enough to deprive corporate creditors of the privilege to make collection of just obligations through a judgment and the resulting lien. *Swartley v. Oak Leaf Creamery Co.*, 135 Iowa 573. See, also, *Voll v. Zelch*, 198 Iowa 1333.

III. Abatement of a "pending action" does not result merely from the appointment of a "receiver." *Weigen v. Council Bluffs Ins. Co.*, 104 Iowa 410; *O'Mara v. Newton & Northwestern R. Co.*, 156 Iowa 701. See, also, *West Virginia U. Co. v. Dura Glass Mfg. Co.*, supra.

IV. Determination of this legal dispute does not rest alone upon the fact that judgment may be obtained after the "appointment of a receiver," as sanctioned by the authorities just named; for such adjudication, under certain circumstances and conditions, is permitted to have no other effect than that of the establishment of a "claim," and in such event, the lien authorized by Section 11602 of the Code of 1924 does not become operative to the extent that a "preference" is thereby created as against general creditors in a "receivership proceeding." 34 Cyc. 231 furnishes this text:

"Where the court in the administration of the assets of a debtor lawfully takes into its possession through the medium of a receiver the assets and property of the debtor, no creditor can obtain any preference by lien under any judgment rendered thereafter * * * ."

Again, the same thought is expressed by the Supreme Court of the United States. *Bank of Bethel v. Pahquioque Bank*, supra, contains this language:

"Claims presented by creditors may be proved before the receiver, or they may be put in suit in any court of competent jurisdiction, as a means of establishing their validity and to determine the amount owed by the association; but the judgment when recovered will not give the creditor any lien on the property of the delinquent association, nor secure to the judgment creditor any preference over other creditors whose claims are proven before the receiver."

Criterion for fixing the line between lienable and non-lienable "judgments" in this respect must be sought in the nature of the "receivership." If the purpose of such cause is to make general distribution and administration of the assets of the cor-

poration, with the view of sequestering all its property for that object, then the "receiver" is paramount in his possession and jurisdiction, so that the attempt by any creditor to obtain a "lien" on such assets by a "judgment" against the debtor is inferior to the equities of general creditors under the "receivership."

V. When, however, the underlying goal of the "receivership" is temporary, and for an aim other than the winding up of the corporation's affairs and the "distribution and administration" of its estate, then, under proper facts and prerequisites, a legal right may be put in "judgment" which will culminate in a senior "lien" upon the "real estate" of the corporation. Referring again to 34 Cyc. 199, we find the announcement:

"The application of this rule [pro-rata and equitable distribution] depends upon the nature of the suit in which the receiver is appointed, and the rule has been held not to apply to a receiver *pendente lite* where the sole object is to preserve the property for the purpose of the decree as between the parties to the suit only, without affecting the interests of third persons as distinguished from a receivership for the general administration of assets, as above mentioned."

*Johnson v. Garner*, supra, on page 776, states:

"The rule as indicated in the quotation [lack of right to acquire lien in independent action after receivership] has an exception into which the present case falls. In the beginning of this litigation there was no thought of settling Johnson's estate, or making an equitable distribution of his property. The order of appointment contained no direction to the receiver to give notice to creditors to file claims. The creditors were in no wise restricted in the prosecution of their demands, and it was not until January 18, 1915, more than 7 months after the death of Johnson, that it became apparent to this court that it must in this proceeding distribute the estate. The entry of the judgments in favor of Ada Smith and the banking corporation, followed by the death of Johnson, had then raised those debts from the fifth to the fourth class mentioned in Section 6052 of the Revised Laws of Nevada, and preferred them to general demands. This preference, having once attached, was not displaced by the subsequent determination of this court to administer the estate."

*West Virginia U. Co. v. Dura Glass Mfg. Co.*, supra, embodies similar phraseology in this:

"It is old law, and uncontroverted, that when, for a corporation adjudged insolvent, a receiver is appointed to wind up its affairs, administer its property, and distribute the proceeds thereof among creditors and stockholders, a creditor of the corporation will not thereafter be permitted to perfect a lien against the property in an independent action. * * * But the law cited by counsel does not apply to this case. It is true that the bill in the chancery suit prays for dissolution of the glass company and the complete administration of its assets; but this receivership must be weighed, not by the prayer in the bill, but by the decree of the court. This decree, as heretofore shown, gives the receiver authority for a specific purpose, which, instead of looking to a dissolution of the corporation, authorizes its continued existence. The decree does not adjudge the glass company insolvent; it does not provide for the payment of the company's debts, does not state that the ultimate purpose of the court is to make an equitable distribution of the company's property * * *."

Likewise, in the case before us, appellant's "suit was pending" when application was made for the "appointment of a temporary receiver," and "judgment" was rendered before the "receivership" became "permanent." At the time of the temporary appointment, as well as the final, the avowed object and destination were that "the receivership be continued until the time of the annual meeting of the stockholders of the Sheridan Oil Company, and until a valid meeting of the stockholders can be held for the purpose of electing directors to take charge of the business of the corporation."

No other idea was expressed. General creditors were not made parties; their interests were not at this time being protected or conserved, except incidentally. Insolvency of the corporation was not found. "Administration" and "general distribution" were not in the minds of the litigants, but rather, conservation, to be accomplished through the appointment or election of active and efficient officers. Every syllable of the petition, as well as the court's decree, indicated not dissolution, but continued business operations and activities.

Not until many months after appellant's judgment was pro-

cured and lien acquired did the "temporary receivership" cease and the "permanent" begin; and even then the scope thereof was confined in time and extent to the prayer of the "petition" just quoted.

A long while afterwards, upon an additional application, the court finally transformed the previously circumscribed and limited "receivership" into one of general significance, and for the first instance brought in all the creditors for the purpose of final "administration and distribution;" but when this was done, appellant's "judgment" had, for a considerable period, been a valid and existing "lien" upon the real estate in question, and it was entitled to a preference because thereof.

The district court was wrong in refusing to recognize this fact, and its judgment should, and must, be reversed.—*Reversed.*

STEVENS, C. J., and EVANS, FAVILLE, and WAGNER, JJ., concur.