FRANK GEHLE et al., Appellants, v. R. H. HART et al., Appellees.

No. 39992.

FEBRUARY 11, 1930.

*E. C. Weber, J. W. Napier,* and *Herminghausen & Herminghausen,* for appellants.

*E. W. McManus,* for appellees.

GRIMM, J.—In the year 1923, the plaintiffs, father and son, were the owners of 280 acres of land situated in Lewis County, Missouri. One Hettinger was, at the same time, the owner of some lots in Keokuk, Iowa. Hettinger had executed a mortgage upon said lots in favor of T. J. Spurgeon, for $10,000, which mortgage was dated November 25, 1923, and which was filed for record on the 14th day of February, 1924.

The defendant R. V. McCutchan was a real estate dealer, living in Keokuk. Sometime in November or December, 1923, McCutchan called on the Gehles, then living on their farm in Missouri, and offered to exchange the Hettinger property in Keokuk for the farm in Missouri. It appears that a written contract (afterwards lost) was entered into, by the terms of which Hettinger was to take the Missouri farm, then subject to a mortgage for $13,500, which he was to pay off, and give the Gehles a mortgage for $3,500 on the farm. In exchange for this, the Gehles were to take the Keokuk property, subject to the $10,000 mortgage hereinbefore referred to in favor of Spurgeon. After this contract had been entered into, the Gehles sold their personal property, and moved off the farm.

The deed to the Keokuk property executed by Hettinger in favor of the Gehles was dated November 12, 1923, and was filed for record February 14, 1924. It contained the following assumption clause:

"Subject to the mortgage of ten thousand ($10,000.00) dollars and accrued interest after January 1st, 1924, for which the grantee assumes and agrees to pay."

This deed was handed to the senior Gehle sometime in March, 1924, after it had been recorded, at which time the Gehles took possession of the Keokuk property. In the matter of the exchange of the properties hereinbefore referred to, the Gehles were represented, to some extent at least, by an attorney in Missouri. So far as the records show, Spurgeon, who held the $10,000 mortgage on the Keokuk property, had no personal

connection with the transaction, and was interested only in having the $10,000 paid.

After the Gehles had been in possession of the Keokuk property for some time, and had collected the rents, Ralph Smith, an attorney at Keokuk, wrote Mr. Gehle, on May 15, 1924, a letter, on behalf of Spurgeon, containing, among other things:

"The interest on the Spurgeon mortgage was due on May 5th and Mr. Dain of Carthage would like to see you about renting the vacant ground and the adjacent store room."

It is the claim of the plaintiffs that, about the 7th of February, 1924, Floyd Gehle and his wife, Mrs. Frank Gehle, and Frank Swinderman appeared in Mr. McCutchan's office, at which time the Gehles told McCutchan that they wanted to rent the Missouri farm, because they thought the exchange deal was not going through; and they claimed that at that time they told McCutchan that the mortgage upon the Keokuk property was too large. It appears that Spurgeon, who held the mortgage, was in McCutchan's room, and some conversation was had with him in reference to the amount of the mortgage. It is claimed that Spurgeon at that time said that the Keokuk property was worth $15,000. He also expressed the opinion that McCutchan would work out the exchange of properties, and it is claimed that Spurgeon then said, in substance, that if the Gehles wanted to see anything about the property, they should go to McCutchan. It is by this conversation that plaintiffs seek to make Spurgeon responsible for the fraud which the plaintiffs claim was practiced upon them by McCutchan in connection with the procurement of the judgment which the plaintiffs seek to have set aside.

It is the claim of the plaintiffs that, about the 1st of July, 1924, they received a letter from Spurgeon, which was lost, and no copy of which could be procured from any source, the substance of which, Gehle said, was to the effect that the exchange of properties was not going through, and that he, Spurgeon, had a chance to get rid of the Keokuk property. For that reason, he asked Gehle to turn the deed to the Keokuk property over to Mr. McCutchan and withdraw the trade. The Gehles claimed to have executed a deed to the Keokuk property, and

they delivered the same to R. V. McCutchan about the 1st of July, 1924.

On August 23, 1924, a foreclosure suit brought by Spurgeon was filed, and notice was served on the plaintiffs in this suit. They claim they immediately went to McCutchan's office, at which time they say McCutchan told them not to appear to the suit; that it would not be necessary. It is alleged that McCutchan told them that, inasmuch as they (the Gehles) had given a quitclaim deed, they "were out of it." The plaintiffs claim that they were informed by McCutchan that Spurgeon knew that McCutchan had the quitclaim deed. It appears that several efforts were made by both the Gehles and Frank Smith, attorney for Spurgeon, to have McCutchan surrender the quitclaim deed which had been delivered by the Gehles to him, but McCutchan would not surrender the deed except for a consideration of $1,000, which was not paid. McCutchan was made a party defendant to the foreclosure suit.

The next term of the district court after the service of the notice commenced on September 15, 1924. On that day, Mr. Smith, as attorney for Spurgeon, wrote Frank Gehle, at Fort Madison, Iowa, a letter which contained the following:

"He [Spurgeon] says that he does not want to make any arrangements with McCutchan and that he intends to go on with the case. * * * I will not take a judgment right away but will give you time to straighten matters if you wish. I will however ask for the appointment of a receiver."

On October 11, 1924, Mr. Smith wrote Frank Gehle a letter, containing, among other things, the following:

"I have been holding up the Spurgeon matter, hoping that you would be able to work out some way. I have had a receiver appointed and McC. is not getting the rent. It may be that you can do something with him now. I really should not hold this open any longer but I will hold it until Wednesday to give you a chance at him, if you want to try."

On October 28, 1924, Mr. Smith wrote Gehle, suggesting a conference between Gehle and Spurgeon at Smith's office. He said, among other things:

"I will have him here and see if you can reach an agreement. Spurgeon will not take up the McCutchan proposition."

On November 17, 1924, Smith took judgment and decree. Gehle admits that:

"He [Ralph Smith] told me. that judgment had been rendered for $10,000. I learned, a day or two after the judgment was rendered, of the fact that it had been rendered."

On December 26, 1924, Smith wrote Gehle as follows:

"Today was the day for the sale and T. J. [Spurgeon] was over. However he did not want to bid in the property with the chance that you would have to hold the sack so we had the Sheriff adjourn the sale until Monday at 2:00. If you can do anything with McCutchan before that date do so."

It appears without conflict that, sometime in the month of December, 1924, the Gehles employed the law firm of Johnson & Martin, of Fort Madison, to represent them in this matter, and that Mr. Smith, attorney for Spurgeon, had various conferences with these gentlemen, as they represented the Gehles. Martin came to Keokuk, examined the situation, and had a conference with Smith. Gehle admits that he told Martin all about the facts and circumstances connected with this matter, on the way down to the conference. It also appears that Gehle had his attorney Johnson endeavor to get Spurgeon to release the Gehles from the deficiency judgment which arose by reason of the fact that Spurgeon had bought the property at execution sale for $7,500. At one time, negotiations were pending between Smith, representing Spurgeon, and Johnson & Martin, representing the Gehles, whereby Smith undertook to get a mortgage on some property belonging to the Gehles at Fort Madison, as additional security for the $10,000 mortgage. The Gehles, however, refused to give the mortgage. On February 6, 1925, Mr. Smith wrote Gehle at Fort Madison, advising him that the property had been purchased by Spurgeon for $7,500, and on February 20, 1925, Mr. Smith wrote Frank Gehle, at Fort Madison, a letter, containing, among other things, the following:

"T. J. Spurgeon is insisting that the balance due on that

judgment be settled by March 1st or that I issue additional execution for collection on that date.''

It further appears that, in June or July of 1925, Gehle employed Attorney Weber, of Fort Madison, to represent him in the matter. Smith, representing Spurgeon, and Weber, representing the Gehles, had some correspondence on the subject, prior to August 1, 1925. Under date of July 24, 1925, Smith wrote a letter to Weber, advising him of the deficiency judgment against the Gehles.

It further appears that, on the 23d day of February, 1927, a stipulation was entered into, as follows:

''It is agreed by and between the parties hereto that the sheriff of Lee County, Iowa, may hold the execution in this case until April 12th, 1927, and if the judgment in this case is not satisfied by that date, he may then proceed to sell the real estate seized under said execution with the same force and effect as if said execution had been originally issued on that date. Dated this 23rd day of February, A.D. 1927.

''[Signed]    T. J. Spurgeon,
''By Ralph B. Smith, his attorney.
''Frank Gehle,
''By E. C. Weber, his attorney.
''Cora Gehle.
''American State Bank,
''By J. H. Kennedy, Cashier.
''Santa Fe Avenue Savings Bank,
''By E. H. Pollard.''

The suit at bar was begun on May 2, 1927, two years and six months after the rendition of the original judgment.

I. There is some showing in the record to the effect that the Gehles understood that they were buying the Keokuk property *incumbered* with the $10,000 mortgage, but that they did not understand that they were *assuming* and agreeing to pay said mortgage. The deed from Hettinger to Gehle contained a clear and unmistakable assumption clause. There is no dispute but that this deed came into Gehle's possession sometime in March, 1924. Even though he had not previously understood the situation, he was at that time definitely advised that by the terms of the deed he had assumed and agreed to pay

the mortgage of $10,000 on the Keokuk property. It is sig·
nificant that nowhere in the record does it definitely appear
that the Gehles had or claimed any defense to the foreclosure
action.

It is not claimed that the Gehles, after the deed to the
Keokuk property was delivered to them, were claiming any
defense to the assumption clause contained in the deed. The
burden of the complaint of the plaintiffs in this case is based
upon the alleged misconduct of McCutchan, acting, as the plain-
tiffs claim, as the agent of Spurgeon. The burden is on the
plaintiffs to satisfactorily show the alleged agency between
McCutchan and Spurgeon. A very careful examination of the
record fails to show that the plaintiffs have satisfactorily car-
ried this burden. Whatever may have been the belief of the
plaintiffs at the time of the conference in McCutchan's office,
subsequent developments were such that the plaintiffs could no
longer, in reason, believe that McCutchan, rather than Smith,
represented Spurgeon. The correspondence hereinbefore re-
ferred to has an important bearing on this subject.

Smith first demanded payment of the past-due interest on
the mortgage, and thereafter, step by step, by numerous letters,
which Gehle acknowledged he received, Smith not only urged
action on the part of the Gehles, but kept them closely advised,
from time to time, of the progress which was being made. The
Gehles were advised of the judgment. They were then advised
of the day set for the sale, and of the various postponements.
They were finally advised that Spurgeon had bid in the prop-
erty at $7,500, and negotiations followed for the payment of
the deficiency by the Gehles, or that the Gehles furnish security
for the payment of the same by giving a mortgage on other
property. The Gehles employed attorneys, to whom they gave
full information on the subject, and these attorneys actively
entered various negotiations, looking to the best interests of
the Gehles. Notwithstanding all of this, the suit at bar was
not brought until two years and six months after the original
judgment against the Gehles was entered.

If it is claimed by the plaintiffs here that no judgment
was to be taken against them, the answer is that they were
served with notice of the suit, and knew definitely about the
judgment immediately after it was rendered. If it is their

claim that the judgment was not to be enforced against them, the answer is that they were promptly and definitely advised that collection of the judgment would be enforced against them. Numerous delays were given for their special benefit, and they were promptly so notified.

Chapter 552 of the Code of 1927 furnishes a procedure to vacate or modify judgments. Section 12787 provides:

"Where a final judgment or order has been rendered or made, the district court, in addition to causes for a new trial hereinbefore authorized, may, after the term at which the same was rendered or made, vacate or modify the same or grant a new trial: * * *

"2. For fraud practiced in obtaining the same. * * *

"5. For unavoidable casualty or misfortune preventing the party from prosecuting or defending."

Section 12788 provides:

"Where the grounds for a new trial could not with reasonable diligence have been discovered before, but are discovered after the term at which the verdict, report of referee, or decision was rendered or made, the application may be made by petition filed, on which notice shall be served upon the successful party and returned, and he be held to appear, as in an original action."

Section 12790 reads:

"No such petition shall be filed after one year from the rendition of final judgment."

Manifestly, this suit was not brought within the year, but it is the claim of the plaintiffs that they have brought themselves within the rule of equity which gives courts power, upon equitable grounds, to vacate a judgment after the expiration of one year. In *Swartzendruber v. Polke*, 205 Iowa 382, this court said:

"In brief, he [the plaintiff] contends that, if the fraud alleged is extrinsic and collateral to the proceeding and issues in the original case, a court will take cognizance in an equitable proceeding to vacate a judgment or decree after the expiration of one year. This is the well settled rule of this jurisdiction,

but it is subject to a well defined limitation, to wit: If plaintiff discovered the alleged fraud within one year, or by the use of reasonable diligence on his part might have discovered it within that time, he is not legally privileged to prosecute his independent action in equity to vacate and set aside the judgment. *Graves v. Graves*, 132 Iowa 199; *Montagne v. Cherokee County*, 200 Iowa 534; *Abell v. Partello*, 202 Iowa 1236.''

This suit is based upon alleged fraud, extrinsic and collateral to the original proceeding, and the plaintiffs contend that equity will entertain and determine such claims when suit is begun after the expiration of the year. Such is the general rule, but subject to the definite limitation that, if the fraud is discovered, or by the use of reasonable diligence it might have been discovered, within the year, then the suit may not be started after the expiration of the year.

This rule being applied to the facts in the case at bar, the plaintiffs cannot recover. The plaintiffs discovered, within one year from November 17, 1924, the day when the judgment was entered, or by the use of reasonable diligence on their part they might have discovered within that time, everything which they claim. Under these circumstances, the finding of the district court must be, and is,—*Affirmed*.

MORLING, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.