IN RE ESTATE OF JOHN F. SIMPSON.

LAWRENCE PINCKNEY, Administrator, Plaintiff, Appellee, v. SHIRLEY A. WEBSTER, Trustee, Defendant, Appellant, LEO C. PERCIVAL, Administrator, Defendant, Appellee.

No. 44434.

NOVEMBER 22, 1938.

Hamilton & Webster, for appellant.

John N. Hartley, for plaintiff, appellee.

Percival & Wilkinson, for defendant, appellee.

MILLER, J.—On May 27, 1929, John F. Simpson, the owner of 97 acres of real estate located in Madison County, was adjudged insane, and on June 26, 1930, a guardian of his property was appointed by the district court of Madison County, Iowa. On January 14, 1931, C. M. Wallace commenced an action at law in the district court of Madison County against said John F. Simpson, in which action the guardian of his property was not joined as a party defendant. Proper service of an original notice was made upon John F. Simpson, following which a guardian ad litem was appointed, who filed answer for said defendant, and on May 12, 1931, judgment was rendered against John F. Simpson in said action in the sum of $500. No execution was ever issued on said judgment, no claim was filed thereon in the guardianship, and likewise no application was made to the probate court for an order directing the guardian to pay said judgment. Said John F. Simpson never regained his sanity, but died intestate on April 8, 1936, following which Lawrence Pinckney was appointed administrator of his estate. Following his death the guardian filed his final report, which report made no provision for the payment of claims against the guardianship or the said judgment. Thereafter, under order of court the guardian delivered to the administrator the assets of the guardianship. During the course of the administration of the estate of said John F. Simpson, the administrator sold the 97 acres of real estate for the purpose of paying claims against said estate. The proceeds from said sale, together with the personal assets belonging to the estate are insufficient to pay the taxes accumulated against the real estate, the said judgment and the claims filed therein. Following the sale of said real estate, the administrator filed an application, therein alleging said judgment to be a lien upon said real estate, and asking that he be authorized to pay the same from the proceeds of the sale of said real estate prior to the payment of claims filed and allowed

against said estate. C. M. Wallace having in the meantime passed away, Leo C. Percival as administrator of his estate, filed an answer to said application, joining in the prayer thereof.

Shirley A. Webster, trustee, the holder of a claim of the third class against said estate, filed an answer to said application, therein denying that the judgment of Leo C. Percival as administrator of the estate of C. M. Wallace, deceased, ever became or was a lien on the real estate in question, and praying that the court decree that said judgment be not entitled to preference or allowance as a claim against the estate of John F. Simpson, deceased. Following hearing, the trial court ordered the payment of said judgment in full prior to the payment of any amount on the claim of Shirley A. Webster, trustee, from which ruling and order said Shirley A. Webster, trustee, appeals.

It is the contention of appellant that the trial court erred in ordering the payment of this judgment as a preference for the reason that the property of a ward in the hands of his guardian is in *custodia legis*; that such property is not properly or legally liable to seizure under a general execution upon a judgment obtained against a ward while under guardianship; and such property not being subject to seizure on execution, that a judgment does not become a lien on real estate of a ward in the hands of his guardian.

The validity of the judgment is not affected by the insanity of the defendant John F. Simpson, or by the fact that a guardian had been appointed for his property. As is stated in Jones v. Schaffner, 193 Iowa 1262, 1270, 188 N. W. 787, 790:

"The mere incompetency of the party, even if it be unquestioned and complete, does not prevent the court's acquiring jurisdiction over or authority to pass upon her property rights. Though a person be a lunatic or idiot or minor or otherwise without capacity to transact business, she may be made party to any litigation affecting her property interests or property rights, and adjudication thereof be had as effectively as if she were of normal mental capacity."

Likewise, in the case of Montagne v. Cherokee County, 200 Iowa 534, 205 N. W. 228, the following statement is made [page 537 of 200 Iowa, page 230 of 205 N. W.]:

"A judgment rendered against an insane person in a proceeding where jurisdiction is acquired by such service as would be valid but for defendant's insanity is, at most, voidable, and not void. The effect of insanity is to render the judgment subject to attack, provided that a prima facie defense to the action is shown to have existed. The rule we here express is universally announced by the courts. Lamprey v. Nudd, 29 N. H. 299; Atwood v. Lester, 20 R. I. 660, 40A. 866; West v. McDonald (Ky), 113 S. W. 872; Heard v. Sack, 81 Mo. 610; Thomas v. Hunsucker, 108 N. C. 720 (13 S. E. 221); Denni v. Elliott, 60 Tex. 337; Dunn v. Dunn, 114 Cal. 210 (46 Pac. 5); Carroll Imp. Co. v. Engleman (Iowa) 99 N. W. 574 (not officially reported); Hawley v. Griffin, 121 Iowa 667, 92 N. W. 113, 97 N. W. 86; Watson v. Horner, 178 Iowa 499, 159 N. W. 1032; Jones v. Schaffner, 193 Iowa 1262, 188 N. W. 787. Nor is it material to the result that no appearance was made by or on behalf of the insane defendant, and judgment was rendered against him by default. Hawley v. Griffin, supra; Watson v. Horner, supra."

As the court acquired jurisdiction in the action in which C. M. Wallace was plaintiff, the judgment entered therein was not void. Section 11602 of the Code provides that judgments are liens upon real estate owned by the defendant at the time of such rendition. Appellant contends, however, that regardless of the fact that the judgment was a verity, that it constitutes nothing more than an adjudication of the amount owing Wallace by the incompetent, and that section 11602 of the Code is not applicable; which contention is based upon the claim that the property being in *custodia legis* no levy could be made under an execution, and as no execution could be levied, no lien existed.

The record in the court below fails to make any showing of insolvency on the part of John F. Simpson at the time the judgment was rendered against him, such record in fact showing that the major portion of the present liabilities of his estate have all accrued since the date of the rendition of the judgment. The statutes providing for the appointment of guardians for the property of incompetents do not contemplate the disposition of the ward's assets except in instances wherein the ward's estate is insolvent, or probably will be insolvent, as is provided for in section 12630 of the Code. Except in instances provided for in section 12630 of the Code, the statutes simply

contemplate that the business affairs of the ward shall be conducted by a guardian in lieu of the ward himself on account of the ward's incompetency. As a result thereof, at the time of the rendition of the judgment involved, the estate of the ward was not insolvent, nor was there any probability at the time that the same would be insolvent. The judgment was rendered at a time when the guardian was managing the ward's estate in lieu and in place of the ward himself, and at a time when no proceedings were being had, or were contemplated being had relative to the distribution of the assets of the ward's estate.

In the case of Shumaker v. Bohrofen, 217 Iowa 34, 250 N. W. 683, 92 A. L. R. 914, this court was confronted with the problem of whether or not an attachment in an action against a ward under guardianship could legally issue against real estate of the ward at a time when proceedings were pending in the probate court to mortgage the real estate for the purpose of paying a specified debt. The probate court made such order, and the attachment was levied immediately preceding the entry of the order, which, if valid, would have rendered the probate order futile. While we held in that case that the real estate was in *custodia legis* and therefore not subject to attachment, it is apparent that the fact situation therein is in no manner analagous to the instant case. Therein the plaintiff endeavored to procure a prior lien by attachment of the identical real estate that was then in charge of the guardian under direction of the court for the purpose of disposal to pay a specified debt, or property plainly in *custodia legis* for the purpose of sale; whereas in the instant action no execution has ever issued, and at the time of the rendition of the judgment the ward's property was not in the control of his guardian for sale or disposal, but only for management and conservation on account of the ward's incapacity.

It is generally recognized that in receivership proceedings wherein a receiver has been appointed by the court to take possession of the property of an individual, that the property is then strictly in *custodia legis*. In such receivership proceedings, we have recognized the distinction between lienable and nonlienable judgments, and have held that where the purpose of the receivership is other than the distribution of the assets of the receivership for the purpose of winding up the affairs of the person or party under such receivership, that a legal

right may be put in judgment, which judgment will result in a senior lien upon the real estate thus in the possession of the receiver under the provisions of section 11602 of the Code.

In Britten v. Sheridan Oil Co., 205 Iowa 147, 217 N. W. 800, a temporary receiver to take charge of all the assets of the Sheridan Oil Company and hold same subject to the further orders of the court was appointed prior to the rendition of a judgment against said Sheridan Oil Co. The temporary receiver was later made permanent, following which proceedings in the receivership were instituted of a dissolving and liquidating nature. The opinion reveals that at the time of the rendition of the judgment, even tho a receiver had been appointed and had possession of the property, that no proceedings had been instituted for the distribution or liquidation of the property, and that therefore the judgment constituted a prior lien against the real estate involved. This court stated in connection therewith as follows, to wit [page 151 of 205 Iowa, page 802 of 217 N.W.] :

"Criterion for fixing the line between lienable and non-lienable 'judgments' in this respect must be sought in the nature of the 'receivership'. If the purpose of such cause is to make general distribution and administration of the assets of the corporation with the view of sequestering all its property for that object, then the 'receiver' is paramount in his possession and jurisdiction, so that the attempt by any creditor to obtain a 'lien' on such assets by a 'judgment' against the debtor is inferior to the equities of general creditors under the 'receivership.'

"V. When, however, the underlying goal of the 'receivership' is temporary, and for an aim other than the winding up of the corporation's affairs and the 'distribution and administration' of its estate, then, under proper facts and prerequisites, a legal right may be put in 'judgment' which will culminate in a senior 'lien' upon the 'real estate' of the corporation. Referring again to 34 Cyc. 199, we find the announcement:

" 'The application of this rule [pro rata and equitable distribution] depends upon the nature of the suit in which the receiver is appointed, and the rule has been held not to apply to a receiver *pendente lite* where the sole object is to preserve the property for the purpose of the decree as between the

parties to the suit only, without affecting the interests of third persons as distinguished from a receivership for the general administration of assets, as above mentioned.' ''

 In view of the fact that, at the time of the rendition of the judgment, some six years preceding the instant action, and at a time when the guardianship was entirely solvent, with no proceedings then pending, or in contemplation relative to the dissolution or distribution of the assets of the guardianship, it seems to us, under the doctrine of the last cited case, that the judgment was a lien upon the real estate involved.

Being satisfied that the court had jurisdiction to render the judgment involved herein, that the judgment is valid and binding, that the proceedings in guardianship at the time of the rendition of the judgment were solely for the management of the ward's property by the guardian in lieu of management by the ward himself, and not for the purpose of the dissolution or distribution of the assets of the ward's estate, it follows that under the provisions of section 11602 of the Code that said judgment did then become a lien upon the real estate of the ward, and that the action of the trial court in ordering the payment thereof prior to the payment of claims against the estate of John F. Simpson, was correct and proper.—Affirmed.

SAGER, C. J., and HAMILTON, RICHARDS, KINTZINGER, DONEGAN, and STIGER, JJ., concur.