Staunton.

WAINWRIGHT AND OTHERS V. BANKERS' LOAN AND INVEST-
MENT COMPANY.

September 14, 1911.

1. LANDLORD AND TENANT—*Assignment of Lease—Restrictions on Assignments.*—In the absence of express prohibition all leases are assignable, and if it is intended to restrict and bar the power of assignment, it must be done by special and precise stipulations. Such restrictions, however, are not favored by the law and are strictly construed.

2. LANDLORD AND TENANT—*Assignment of Lease—Notice to Terminate—Right of Assignee.*—Where property is leased for certain designated purposes, and the lessee covenants not to use the premises for any other purposes, nor to sublet them or any portion thereof, to be used for any other purpose without the consent of the owner, the manifest intent is that the lessee may sublet, without the consent of the lessor, for the purposes specified. If, in such a lease, the lessee is given the right, under given contingencies, to terminate the lease upon written notice to the lessor, the assignee of the lessee may do the same.

Error to a judgment of the Circuit Court of the city of Roanoke in a proceeding by motion for a judgment. Judgment for the plaintiff. Defendants assign error.

*Reversed.*

The opinion states the case.

*A. B. Hunt* and *Woods & McNulty,* for the plaintiff in error.

*Hall, Woods & Jackson,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This writ of error brings under review a judgment for $945.00, recovered by the defendant in error against the plaintiffs in error for alleged arrearages of rent arising out of a contract of lease of the "Academy Hotel" in Roanoke city.

The lease bears date April 2, 1907, and demised the premises to the defendants for the term of five years, determinable at the option of the lessee in certain contingencies before the expiration of the term. Among other provisions, the lease stipulated, that the property should be used "for hotel, billiard and pool room, and saloon"; and the defendants covenanted not to use the building for any other purposes, "or to sublet said building, or any portion thereof, to be used for any other purpose without the consent" of the lessor. The agreed rental was $154.00 per month for the first eleven months ending with the license year; $167.00 per month for the second year, and $189.00 per month for the residue of the term, for the payment whereof the lessees bound themselves jointly and severally.

The lease also stipulated that in the event a license could not be obtained for the sale of liquor, or, if obtained, that the right to conduct a bar-room should cease, the lessees, at their option, might abrogate the contract within sixty days after the end of the license year, provided the failure to procure license was not due to the default, neglect or misconduct of the lessees in the manner of conducting the premises as a saloon or hotel, by giving immediate notice to the lessor of the failure to obtain such license, or to continue the lease under the contract, except the right to conduct the saloon, until the end of the term; in which latter event there should be an abatement of the rent equal to twenty-five *per cent.* of the monthly installments accruing after the expiration of the license year. The lease further stipulated that the lessees should immediately notify the lessor of any objection

that might be raised to the granting of such license, and that the lessor should have the right to employ counsel at the expense of the lessees to assist in making application for and in attempting to procure the same. There were other covenants in the lease which do not demand special notice.

The defendants took possession of the property in May, 1907, and sublet the hotel portion, conducting personally the bar-room, as partners, until February 14, 1908, when Wainwright sold his interest to Ayres. Ayres continued the business, paying the rent to Turner & Turner, local agents for the plaintiffs at Roanoke, until July 17, 1908, when he assigned one-half of his interest to C. K. Moore. Ayres and Moore then continued the business just jointly until the latter part of March, 1909, when Ayres assigned his interest to Moore.

At the April term, 1909, of the corporation court, Moore made application for a bar-room license for the license year commencing May 1, 1909, and ending April 30, 1910, but license was denied, the evidence tending to show that the court had determined to refuse all liquor licenses in that section of the city. Thereupon, Ayres and Moore, on April 30, 1910, united in giving notice to the lessor of their election to terminate the tenancy, by registered letter addressed to the home office of the plaintiff in New York, and by delivering a copy to the local agents in Roanoke. During the month of May following, Clark, the president, and Turner & Turner, the local agents, informed Ayres that they would not accept the surrender of the property, but would hold the original lessees responsible for the entire rent.

The misunderstanding between the parties growing out of the foregoing facts, and others which need not be specifically mentioned, culminated in the litigation which resulted in the judgment complained of.

The controlling assignment of error involves the ruling of the trial court in the matter of giving and refusing instructions.

The court refused the prayer of the defendants to instruct the jury that the lease was assignable; and, as corollary to that interpretation of the contract, at the instance of the plaintiff, told the jury that the application of Moore, the assignee of the lease, for a bar-room license, and the refusal of the court to grant such license, was not a sufficient compliance with the covenant of the lease to authorize the abrogation of the contract and surrender of the premises by the lessees.

It is settled law that, in the absence of express prohibition, all leases are assignable. The general doctrine is stated in Taylor's Landlord and Tenant (7th ed.), section 402, as follows: "The power of assignment is incident to the estate of every lessee, unless he has been restrained by the terms of his lease; a covenant, however, not to assign or underlet the premises, without the express permission of the landlord . . . is frequently inserted in a lease."

In section 403 the learned author observes: "Covenants of this description (not to assign or underlet) are construed by courts of law with the utmost jealousy, to prevent the restraint from going beyond the express stipulation."

So, in 2 Minor on Real Property, section 1226, after stating the general rule, that every estate and interest in lands and tenements may be assigned, it is said, "that if, in leases for life or years, it is intended to restrict or bar the power of assignment, it must be done by special and precise stipulations."

In 1 Minor on Real Property, section 417, it is stated that "such restrictions are not favored by the law and are strictly construed."

The language employed in this instance is plain and unambiguous, and leaves no room for construction. The premises are to be used "for a hotel, billiard and pool room, and a saloon," and the lessees "agree not to use said building for any other purpose, or to sublet said building, or any por-

tion thereof to be used for any other purpose without the consent" of the lessor. The manifest intendment of this covenant is that the lessees may sublet the premises without the consent of the lessor for the purposes specified; and it was not contended in argument that the assignment to Moore was a violation of the restrictive covenant.

The error in the ruling of the trial court that the assignment to Moore was invalid was fundamental. It permeated practically all of the subordinate questions involved, and cut up by the roots the several defenses sought to be interposed by the defendants.

There was no contention that the assignment relieved the original lessees, Wainwright and Ayres, from personal liability to pay rent and to see that all covenants imposed upon them by the contract were performed. But they did contend that the assignment to Moore was valid, and that, in certain contingencies, he had the right to give notice and terminate the tenancy. In these contentions the defendants were plainly within their rights under the contract. They introduced evidence tending to show that they and their subtenants had discharged all the obligations imposed upon them by the terms of the lease; that the contingency had arisen which authorized its abrogation, and that due notice of their election to terminate the tenancy had been given. The court ought, therefore, to have held, as matter of law, that the various assignments of the lease were lawful; and pertinent issues raised by the evidence (though controverted by the plaintiff) should have been submitted to the determination of the jury upon proper instructions.

It follows from these views that the judgment of the circuit court must be reversed, the verdict of the jury set aside, and the case remanded for a new trial to be had therein not in conflict with the·views expressed in this opinion.

*Reversed.*