A. H. Blank, Administrator, v. Independent Ice Company and Others, Defendants, and Raimund Seeburger, Intervener, Appellant.

**Landlord and tenant:** forfeiture: waiver. Provisions in a lease for reentry, to distrain for rent or to recover possession in case of default in payment of rent, and in a concurrent contract giving the lessee an optional right to purchase and that the option should cease upon a declaration of forfeiture of the lease are not self-executing, but some affirmative action on the part of the landlord is necessary to create a forfeiture; but this right of forfeiture may be waived by subsequent acceptance of rent money and the assertion of a lien for accruing rent, under the rule that one having two inconsistent modes of redress is bound by his deliberate choice of one.

**Receivers:** sale of option contract. An optional contract for the purchase of real estate which is of value may be sold and assigned by order of court for the benefit of the creditors of an insolvent estate, although it may not ordinarily be sold by the party to whom it was originally given: So that in this receivership proceeding the court had power to order the sale of an option to purchase property made in connection with a lease of the same by the insolvent.

*Appeal from Polk District Court.*—Hon. James A. Howe, Judge.

SATURDAY, NOVEMBER 18, 1911.

THE opinion states the case.—*Affirmed.*

*J. A. Merritt,* for appellant.

*Clinton L. Nourse,* for appellee.

SHERWIN, C. J.—The intervener, Seeburger, leased to the Independent Ice Company certain real property, and at the same time entered into a contract with the ice company, whereby the ice company was given an option to purchase said property for $4,000, payable in installments of $500 each. The lease was made on the 20th day of February, 1909, for a term of two years, and provided for the payment of rent on the 1st day of March following and monthly thereafter. It was also provided that if default should be made in any of its covenants by the tenant it should be lawful for the landlord "to re-enter the said premises or to distrain from said rent, or he may recover possession thereof by action of forcible entry and detainer, or he may use any or all of such remedies." And, further, that the tenant "will not sell, assign, underlet or relinquish the said premises without the written consent of the lessor under a penalty of a forfeiture of all its rights under this lease at the election of the party of the first part." "Lessor has entered into option contract with lessee of this date on said premises to which reference is here made and which is a part hereof." The contract, giving the option to buy the premises, contained the following provisions:

Second party (ice company) shall also annually pay all taxes and assessments that may accrue on said property as they become due, or before they become delinquent and including the last half of the taxes for the year 1908. Whereas said first party (Seeburger) has this day leased

said premises to second party upon the terms specified in the written lease executed between them of this date, and to which reference is here made and which lease is made a part of this contract and which lease is drawn for a term of two years from and after this 20th day of February, 1909: Now, therefore, it is expressly agreed and understood by the parties hereto that in consideration of the covenants of said lease and the further agreements in this contract, said second party shall have the said two years' time provided for in said lease in which to exercise their election to avail themselves of the agreements in this option contract. And in the event that second party should, by their failure to perform the agreements of said lease on their part, then and in that event their right to exercise said option shall thereupon cease and determine, upon the declaration of forfeiture of said lease being made by first party.

The ice company took possession under the lease and erected buildings on the property, but did not pay the rent due on the 1st of March until in June, and never, in fact, paid any rent thereafter. The company owed a large amount, and on the 13th day of July, 1909, this action was commenced for the foreclosure of a mortgage upon its property. A receiver for its entire property was appointed on the same day and took immediate possession thereof, and continued the ice business under the orders and direction of the court. The receiver paid the rent accruing after his appointment, and it was accepted without protest by the intervener. After the receiver had taken possession of the property, and on the 13th day of September, 1909, Seeburger, the landlord, intervened in the action then pending, alleging that he was the owner of the property, and that rent was due him therefor for the months of April, May, June, July, August, and September, and he asked that his lien therefor be established as superior to the liens of the mortgages. In his petition of intervention, Seeburger alleged that he had made the lease and option contract, but he made no claim therein that either had been for-

feited. As a matter of fact, the receiver had paid See-burger the rent for the last half of July and for August and September before the petition of intervention was filed, so that when he intervened he had received all rent that accrued after the receiver took possession, and the only rent due him was for the months of April, May, and June and the first half of July. On the 23d day of October, 1909, upon the application of the receiver, the court ordered him to advertise for sale and accept bids for the ice company's property. This was done, and on the 23d day of November the receiver reported to the court that he had accepted a bid for the general property, and said: "It is further understood and intended that the interest of the defendant in R. Seeburger's property at 15th and Walnut streets, in the city of Des Moines, was excepted from such sale and reserved for the further disposition of the court." On the following day the court entered an order, approving and confirming the sale, but specially excepting from such sale the interest of the defendant ice company in the R. Seeburger land contract for the sale of the real property, and reserving the said interest in the contract for the further disposition of the court. On the 3d of December, 1909, the receiver reported to the court, in a report sworn to on December 2d, that "the defendant ice company has an option to purchase real estate at Fifteenth and Walnut streets with R. Seeburger, and that your receiver has been offered by A. H. Blank the amount of $250 for the said option or land contract, and your receiver respectfully states to the court that, in his judgment, the said amount of $250 is a fair price for said option or contract, and your receiver would recommend that the same be accepted." On the 2d day of December, 1909, Seeburger filed an amendment to his petition of intervention, alleging that default had been made in the payment of rent, that he had given notice in writing, declaring the tenancy at an end, and withdrawing all claim for the rent of the month of

December and all months thereafter. On the 3d of December, Seeburger served upon the ice company and upon the receiver a notice, dated the day before, in which he declared that the lease for the real property was "forfeited and declared null and void from this date and the tenancy thereunder terminated," and also stating that, "I declare the one certain option contract executed on or about the same day by the undersigned R. Seeburger and said Independent Ice Company, which was made a part of the said contract lease for said property, forfeited, canceled, null, and void, according to the terms of said lease and option contract and all rights thereunder terminated."

December 4th the court heard the receiver's report, and found and ordered as follows: "The court finds from such receiver's report that there exists between defendant ice company and R. Seeburger a land contract or option for certain lots at Fifteenth and Walnut streets, in the city of Des Moines, Iowa, in which said ice company had an option or right to purchase said lots, and that A. H. Blank has offered the sum of $250 for said option, and that the same is the fair and sufficient value thereof. The court hereby expressly authorizes, empowers, and directs the receiver to make conveyance or assignment to A. H. Blank of the option or land contract existing between R. Seeburger and the defendant ice company upon the payment to the receiver of the sum of $250, the receiver to pay said rent or other charge as may exist against such contract or option at this date."

On the 6th day of December, 1909, the receiver assigned said option contract to A. H. Blank, and on the 8th and 14th of the month the receiver tendered to Seeburger, in writing, the first installment due on the option contract and also the rent due, both of which were refused. On the 31st day of December, the court approved and confirmed the sale and assignment of the option contract to the plaintiff, Blank. Thereafter the receiver answered the

petition of intervention of Seeburger, in which he pleaded the sale and assignment of the option contract to Blank, the tender of the money, and the refusal of Seeburger to receive the same, and alleged that he was ready and willing to pay said sums, or any other sums required, and praying that the intervener, Seeburger, be decreed to carry out the terms of the option contract. Thereafter the receiver amended his answer to the petition of intervention, pleading a waiver of the right to forfeit the lease and option contract. The purchaser, Blank, also intervened, adopting the answer of the receiver, and asking that his rights be protected. After trial, the court entered a decree, providing for the payment to Seeburger of the rents due him, and decreeing further that, upon the payment of the full consideration named in the option contract to Seeburger, or to the clerk of the court for his benefit, including all taxes, Seeburger convey to Blank the property in controversy. Seeburger appeals. The foregoing statement of the issues and of the various steps taken by the different parties in interest seems necessary to a correct understanding of the situation.

I. The provision in the lease that upon default in the payment of the rent the lessor might "re-enter," "distrain for rent," or recover possession, and the provision in the option contract, that said option should cease and determine upon the declaration of a forfeiture of said lease being made, were not self-acting, and neither operated to terminate the contract or lease in and of themselves alone. Affirmative action on the part of Seeburger was necessary to create a forfeiture, and such action he did not take until the 3d day of December, 1909. In the meantime, the ice company had been in possession about four months and a half, and had never paid more than one month's rent, and that was paid over three months after it was due and should have been paid. The receiver paid the rent accruing after he

1. LANDLORD AND TENANT: forfeiture: waiver.

took possession of the property, and this was received by Seeburger without protest and without any intimation that the lease was forfeited by its own terms, or that he was not willing to let it remain in full force.  He accepted from the receiver the rent for the last half of July and for August and September, and in September filed his petition of intervention, asking that his lien for past-due and for future rents be established as a first lien upon the property of the ice company then in the hands of the receiver.  This was an election on his part to treat the lease and option contract as in full force and effect, and to pursue his remedy to enforce his landlord's lien for rents due and to accrue.  Between the time of the filing of Seeburger's petition of intervention and the 2d day of December, the receiver was attempting to realize something for the insolvent estate by the sale of the option contract.  This was made manifest by the several reports of the receiver and by the orders of the court; and Seeburger, being a party to the litigation, is presumed to have known what was being done, yet, with that knowledge, he continued to claim a lien for accruing rents, and never made a claim adverse thereto, until he filed his amendment to his petition of intervention, on the 2d day of December, wherein he stated that he made no claim for the December rent or any rent thereafter; and in the meantime the receiver had contracted for the sale of the option contract.  We think that Seeburger had already waived his right to forfeit the lease and contract, and that his declaration of December 3d came too late.  *Hollis v. Insurance Company,* 65 Iowa, 454.

It is well settled that a man may not take contradictory positions, and where he has the choice of two modes of redress, and the two are so inconsistent that the assertion of the one involves the repudiation of the other, his deliberate choice of one, with knowledge of such facts as would entitle him to resort to either, will estop him from thereafter going back and electing again.  *Seeley v. Seeley*

*Hdw. Co.,* 130 Iowa, 628; *Elevator Co. v. Railroad Co.,* 97 Iowa, 719.

II. As we view this case, the only serious question is whether the court had the power to order its receiver to sell the option contract. This court has held that a mere option to purchase real estate creates no interest in the land that is subject to execution. *Sweezy v. Jones,* 65 Iowa, 272.

2. RECEIVER: sale of option contract.

And in *Myer v. Stone & Son,* 128 Iowa, 10, it was held that an option which was expressly limited to the party to whom it was given could not be assigned. There is also language in the opinion warranting the conclusion that no purely option contract can be voluntarily assigned. But there is a clear distinction between the voluntary assignment of such a contract and an assignment by the court for the purpose of protecting the creditors of an insolvent estate. In the *Myer* case, we said that the privilege of buying property at a certain price is often of much value, and this must be true; for, where land values are rapidly increasing the right to purchase at a given price within a specified time is often of great value. Many men in this state alone have made fortunes out of such options within the past few years. If an option has, in fact, a value, we see no sound reason why it may not be sold and assigned under order of the court for the benefit of the creditors of an insolvent estate, even though it may not ordinarily be assigned by the party to whom it was originally given. *Spinney v. Miller,* 114 Iowa, 210, was a case analogous to this. There a mortgage had been given which provided that it was nonnegotiable and noncollectible in the hands of others than the mortgagees. The plaintiff therein acquired title by assignment from the receiver of an insolvent estate, and we said: "Notwithstanding this provision, the instrument was transferable under our statutes (Code, section 3046), subject, of course, to any defenses that would have been good as against the assignor.

See, also, *Mershon v. Insurance Co.,* 34 Iowa, 87. Furthermore, it is universally held that a provision restraining the assignment of such an instrument is not operative against an assignment effected by law, or through an order of court. Where it is given force, it is restricted to voluntary alienation." 4 Kent's Commentaries, 128. It is also the general rule that courts of equity will give effect to assignments of future interests of every kind, as well as to assignments of choses in action. 2 Am. & Eng. Enc. of Law, 1010; *Trull v. Eastman,* 3 Metc. (Mass.) 121 (37 Am. Dec. 126); *Bacon v. Bonham,* 33 N. J. Eq. 614; 2 Story's Equity Jurisprudence (13th Ed.), section 1040. That the court had the power to authorize the assignment in question we do not doubt, and the judgment will therefore be *affirmed.*