IN RE ESTATE OF W. A. OWEN.

C. O. WILKINSON, Administrator, et al., Appellees, v.
A. W. HARROUN, Appellant.

No. 42720.

MARCH 12, 1935.

Jay W. Lorenz, for appellant.

Remley J. Glass, for appellees.

HAMILTON, J.—On October 7, 1933, William A. Owen entered into a written lease with A. W. Harroun, whereby said Owen leased of and from said Harroun the East 100 feet of Lot 1 in Block 9 in Mason City, Iowa, for a period of one year from the first day of November, 1933, for the agreed rental of $1,500 per year, with the option to renew and extend the same to the first of January, 1936, at the same rental per year, payable in monthly installments in advance on the first day of each month at the rate of $125 per month. Among other covenants contained in the lease are the following:

"It is further agreed by the party of the second part that neither they nor their legal representatives will underlet said premises or any part thereof or assign this lease without the written assent of the party of the first part had thereto and that assignee shall be liable for said rent.

"It is further expressly agreed between the parties hereto that if default be made in * * * any of the covenants or agreements herein contained to be kept by the party of the second part, it shall be lawful for the party of the first part or his legal representatives to enter into and upon said premises or any part thereof either with or without process of law to re-enter and re-possess the same at the election of the first party. * * *

"Said premises shall be used only for automobile sales, repairs and storage. * * *

"The covenants herein contained shall extend to and be binding upon heirs, executors and administrators of the parties of this lease and no modification thereof shall be valid unless in writing."

Mr. Owen departed this life intestate on December 7, 1933, and in due time C. O. Wilkinson was appointed and qualified as administrator of his estate. On February 27, 1934, the administrator made application to sell this lease, asking the court to prescribe notice to the landlord and all interested parties, and "that upon said hearing, if it shall seem proper to the court, that said adminis-

trator be authorized, empowered and directed to sell and assign said lease, etc." Notice was given to the lessor and all persons interested, in accordance with the prior order of the court. The lessor appeared and filed motion for more specific statement, requiring that the applicant set out a copy of the lease. This motion was sustained, and the request complied with. A triple motion to strike, to transfer, and to dismiss was then filed by the appellant. The case was heard on the 5th day of March, 1934, and, after the arguments of counsel, the presiding judge announced that he would take the matter under advisement, and granted counsel leave to submit briefs and amendments.

Thereafter, on the 10th of March, another amendment to application was filed, with another triple barreled motion by appellant. On the same date, the Northwest Savings Bank of Mason City, Iowa, appeared in the case and filed an application, setting up its claim of $9,333.02 against the estate, and joining with the administrator in asking for sale of the lease. Appellant likewise attacked this application for the same reasons, by a motion of several pages of printed matter. The administrator on the 30th of March filed an application, entitled an "application for authority to sell personal property and leasehold interest". This was likewise attacked by motion to strike certain portions thereof, and to dismiss. These motions were all submitted with the case, and on the 2d of April, 1934, the court entered his ruling on each and all of said motions overruling the same and granting an exception to the appellant, and on the 4th of April, 1934, the court granted an order directing sale of the personal assets, including the lease, to which the lessor, A. W. Harroun, was given an exception, and he has appealed from said order to this court.

The unskillful, choppy, haphazard methods adopted by the appellee in making up the issues and in presenting his proof, leaves much to be desired, even in a probate proceeding. As near as we can gather from the abstract prepared by the appellant, which is not denied by appellee, there was no evidence introduced at the time of the hearing, until after the arguments of counsel, and after the presiding judge had announced that he would take the matter under advisement and granted counsel leave to submit briefs and amendments. Thereafter, the appellee's attorney stated to the court in substance that he would offer the records in evidence. No particular documents were identified, or marked as exhibits, or read

in evidence. No objections were made to this manner of offer, except that appellant's counsel stated in substance that said record could be properly offered when said cause came on for hearing on objections answering the fact allegations in said application. The record then states that the court adjourned, and that thereafter the presiding judge, at divers times, discussed the law questions with respective counsel, but no further hearing was had until the cause was further submitted on the pleadings on or about the 2d day of April, 1934, when, after some further informal discussion of law questions, without offer of testimony in the presence of, or with the knowledge of, appellant or his counsel, the court granted the order. However, in the amendments to the application which were filed thereafter in accordance with the leave granted by the court, the necessary allegations of fact were stated, and a copy of the lease, which is the principal bone of contention, was attached to the pleadings, and all the properly pleaded facts were admitted by the demurrer or motion to dismiss of the appellant, and we think there was sufficient showing to give the court jurisdiction and to warrant the findings in his order with reference to the factual matters.

The court found, among other things, that the estate was insolvent; that there was no real estate owned by the deceased at the time of his death: and that the value of all of his personal assets, including said lease would not equal more than half of the amount of the just debts and charges against the estate. The order further recites that the administrator had been offered $3,250 by the Jewel Motor Company, Inc., for said lease, and that the same was an advantageous offer to the estate, and that it was necessary to sell all of the personal property and said lease to pay the costs of administration, debts, and charges against said estate, and contains the following paragraphs:

"The court further finds that the title to the personal property of said estate passed to the administrator upon his appointment as an officer of the court, that he is administering upon said property under the authority and supervision of the court and that as such any order of sale herein made is involuntary insofar as said administrator or said decedent is concerned.

"Wherefore the administrator of said estate is hereby *ordered* and directed to sell, etc.  *  *  *  including said lease  *  *  *

and to sign, execute and deliver a good and sufficient assignment, etc." (Italics ours.)

Many printed pages of assignments of error are presented by appellant, all of which we have considered, and we conclude that the only assignment of error which has any merit, and which it can be said the appellant is properly entitled to raise, or which is in any way prejudicial to him, is in reference to the legality of the order of the probate court ordering sale and assignment of the lease, in view of the covenants contained therein "that neither they nor their legal representatives will underlet * * * or assign this lease", and the further provision that "the covenants herein shall extend to and be binding upon heirs, executors and administrators of the parties of this lease". A very interesting question is here presented, namely, the construction to be placed upon the foregoing covenants in the lease in question.

We do not find that our court has ever directly passed upon this precise question, and there is likewise a dearth of authority from courts of other jurisdictions. We have carefully read all the cases cited in the briefs filed by counsel and have attempted to glean from the various holdings of the courts of this country and England the construction which courts have given to similar restrictive covenants contained in similar documents. It will serve no useful purpose to review all these cases, but we will set forth some of the legal principles and rules of interpretation which we think are fairly well established by the weight of authority.

Covenants in leases against assignment or subletting are restraints which courts do not favor, and they are construed *with utmost strictness against the lessor*. See note in Ann. Cas. 1913B, page 889. Such restrictions are not favored by the law and are strictly construed. Wainwright v. Bankers Loan & Investment Co., 112 Va. 630, 72 S. E. 129, Ann. Cas. 1913B, 887.

As between the original parties, where the language is plain and unambiguous, such restrictions will be enforced. Snyder v. Bernstein Bros., 201 Iowa 931, 208 N. W. 503.

It is well settled that a covenant not to sell or assign the lease is not broken where the assignment is by operation of law, and that an assignment of a lease by a receiver, a trustee in bankruptcy, and the like, as the agent of the law, to a purchaser of the leasehold interest, would not work a forfeiture, unless the covenant is so drawn as expressly to prohibit such a transfer, and to accomplish

such a prohibition the language must be "very special". Seers v. Hind, 1 Ves. Jr. 294, 30 Eng. Reprint, 351. Such covenants are construed "with the utmost jealousy". Riggs v. Pursell, 66 N. Y. 193. And the use of general language not specially related to the covenant against assignment—language which the law would imply as a term of the lease—is not the "very special" prohibition which the cases require.

It was so held in the case of Francis v. Ferguson, 246 N. Y. 516, 159 N. E. 416, 55 A. L. R. 982, in an opinion delivered by Pound, Justice, and concurred in by Chief Justice Cardozo, now of the United States Supreme Court. In that case there was involved a lease of a garage property in New York City for the term of ten years, at a rental of $16,000 a year. Before the term had half expired, the lessee died, leaving a last will. The executors, apparently on their own motion, entered into an agreement with one Archer, to transfer the lease. Archer refused to complete the agreement on the grounds that the lessor did not consent to the assignment. The complainant asked for a declaratory judgment that the plaintiffs might sell and give good title to the lease. The lower court dismissed the motion for judgment on the pleadings. The Appellate Division of the court unanimously affirmed the judgment. The Supreme Court of New York reversed the case. The lease contained the following covenant:

"That the tenant shall not assign this agreement, or underlet or underlease the premises or any part thereof,  *  *  *  without the landlord's consent in writing."

At the end of the lease appears the following general clause:

"And it is further understood and agreed that the covenants and agreements herein contained are binding on the parties hereto and their legal representatives."

The court said:

"The judgment below proceeds upon a misconception of the effect of the final clause of the lease. It expresses merely what the law presumes, in the absence of such a clause. 'It is a presumption of law, in the absence of express words, that the parties to a contract intend to bind not only themselves, but their personal representatives.' Kernochan v. Murray, 111 N. Y. 306, 308, 18 N. E. 868, 869, 2 L. R. A. 183, 7 Am. St. Rep. 744."

The court further states:

"An ordinary covenant against assignment does not bind the executors of the tenant, and is not broken by a transfer of the leased premises by operation of law. Squire v. Learned, 196 Mass. 134, 81 N. E. 880, 11 L. R. A. (N. S.) 634, 124 Am. St. Rep. 525, 12 Ann. Cas. 977. * * *

"On the death of the tenant, his property was transferred to the executors of his will by operation of law. They had capacity to take and to dispose of it. If it had been the intention of the parties that the personal representatives of the tenant should not dispose of the lease as assets of the testator, the provision against assignment should have been directed to the particular fact. The duty of executors requires them to administer and settle the estate with due diligence. To interfere with the ordinary course of administration and compel them to hold the leased premises until the expiration of the term, something more than casual general words without meaning should appear."

In this case the court cites the case of Roe ex dem. Gregson v. Harrison, 2 T. R. 425, 100 Eng. Reprint 229, wherein the covenant was "that neither the tenant nor his executors or administrators shall let", and the New York court, in commenting on this covenant, said:

"The restriction was explicit, and no doubt could arise as to the meaning of the parties."

The language of the covenant in this English case last referred to is identical with the lease in question, except the words "legal representatives" are used in our lease, instead of the words "executors and administrators". And there is still another distinction between the New York case and the case at bar: In the former, the assignment was a voluntary assignment by the executors, and in the instant case was made under order of the court, and therefore cannot be construed as a voluntary assignment.

The estate of W. A. Owen was hopelessly insolvent. The administrator was appointed by the court. The only voluntary act on his part was that he qualified as such administrator. Thereafter, it became his bounden, statutory duty to apply to the court for direction in the sale and transfer of the personal property in order to obtain funds with which to pay the creditors. He had no election,

except to apply to the court, or resign his office. It will be noticed that in his first application he approached the court as follows:

"That upon said hearing, if it shall seem proper to the court, that this administrator be authorized, empowered and directed to sell and assign said lease."

The court found that the administrator could not, with profit to the estate, continue the business. He also found that under the terms of the lease the estate was bound to pay the rent for the entire term of the lease. He also found that an offer of $3,250, guaranteed by pledge of cash deposited in the bank of $1,500, had been made to the administrator as a consideration for this lease. The creditors were entitled to the full benefit of the value of this leasehold interest. It certainly was never intended by the parties, nor in contemplation in their minds when they entered into this lease that in the event of death of either party, the lease should terminate or that one party should thereby be given an advantage over the other.

In the case of Farnum v. Hefner, 79 Cal. 575, 21 P. 955, 12 Am. St. Rep. 174, a California court said:

"The covenant in the lease is the ordinary kind, which applies, it seems to us, to a voluntary, and not an involuntary, assignment of the lease. It is firmly established by authority that under such a covenant an involuntary assignment by sale under execution— bankruptcy, and the like— is not a violation of the covenant and does not work a forfeiture. 2 Greenl. Ev., section 245; Wood on Landlord and Tenant, 2d Ed., p. 714; Riggs v. Pursell, 66 N. Y. 198; 1 Taylor on Landlord and Tenant, section 408; Bemis v. Wilder, 100 Mass. 446; Jackson v. Silvernail, 15 Johns. 277.

"If the landlord desires to avoid such involuntary transfer of the leasehold interest of the tenant, he may provide expressly in his lease that such transfer of the property shall work a forfeiture, and the same will be effectual."

In the above case the appellant brought his action and re-covered a judgment against the tenant and levied upon the lease-hold interest, and it was sold on execution. The court said:

"We are quite clear, from the authorities cited above, that the transfer of this property by the judgment and sale of the respondent

did not forfeit the lease, and that the ruling of the court cannot be sustained on that ground."

In the case of West Shore R. Co. v. Wenner, 70 N. J. Law 233, 57 A. 408, 103 Am. St. Rep. 801, 1 Ann. Cas. 790, a New Jersey case, the covenant in the lease was as follows:

"The said party of the second part (the lessee) for himself, his executors, administrators and assigns, does hereby covenant and agree to and with the said parties of the first part (the lessors), their successors and assigns, * * * that the said party of the second part, his executors, administrators or assigns, or any of them, shall not nor will, at any time or times hereafter during the term hereby granted, lease, let or demise all or any part of the said premises, nor assign, transfer or make over the same or this present lease or any of his or their term of time therein."

The lessee gave a mortgage on this lease and thereafter died in possession of the premises. The mortgagee brought an action to foreclose his mortgage. The lease was sold and conveyed by one of the masters in chancery and the purchaser took possession of the premises and sublet them to another party. The court held that by the language of the mortgage, which was executed by the lessee, the lease was assigned, transferred, and set over to the mortgagee, and, by making default in payment, he thus gave the mortgagee the absolute right to enter upon the premises or to sell the same to pay the mortgage debt. Thus the act and default of the lessee, operating directly upon the lease, resulted in the transfer of the same, and that result must be deemed to have been within the contemplation of the lessee when he executed the mortgage and failed to pay the debt. The defendants insisted that as the mortgage itself was not a violation of the covenant (because it did not pass the legal title), the legal consequences to which it gave rise cannot be so considered, and cited the case of Doe S. Mitchinson v. Carter, 8 T. R. 57, in support of their position. In this case the lessee had given a warrant of attorney to confess judgment of a debt, and the judgment being entered, the leasehold was sold under execution levied thereon, and the court held that such a sale did not work a forfeiture. The same view was approved by a majority of the judges in Croft v. Lumley, 6 H. L. C. 672. The court says:

"But a distinction was drawn between acts of the lessee directly operating on his estate and the act then *sub judice,* which did not, of its own force, affect the estate."

In the case of Pappas v. Broad & East Jersey Realty Co., 103 N. J. Law, 704, 137 A. 417, a New Jersey case, contains a discussion of the legal principles involved. That was a case where the lease contained an ordinary covenant against assignment, and the assignment was made by a receiver appointed by the court on the petition of one of the stockholders of the National Drug Stores Corporation, the lessee. An ejectment suit was brought against the assignee. The lower court found:

"The application for a receiver in this instance was made by a stockholder, and consented to by the corporation in order to protect its assets, and was in the nature of an application for a *custodial receiver,* directed to the equity side of the court.

"The plaintiff's insistment is that the covenant against assignment was breached when the receiver assigned the lease to the defendant without having obtained the consent of the parties. The defendant's contention is that the covenant was not breached because it prohibits only a voluntary assignment and that the assignment by the equity receiver was not a voluntary assignment; and bases his contention upon the decisions with relations to statutory receivers, which are to the effect that such assignments are by act and operation of law, rather than the act of the parties, and therefore no breach of the covenant. He relies, for support in his contention, chiefly on such cases as Fleming v. Fleming Hotel Co., 69 N. J. Eq. 715, 61 A. 157, which was the case of a statutory trustee in bankruptcy; Gazlay v. Williams, 210 U. S. 41, 28 S. Ct. 687, 52 L. Ed. 950, a statutory assignee in insolvency; Bemis v. Wilder, 100 Mass. 446.

"It is well settled that in the case of a receiver where the petitioner is insolvent, or of a trustee for a bankrupt, that the title to the property of the insolvent or bankrupt passes to the receiver, and that in such cases, the sale by the receiver of leasehold property, even in the face of a restrictive covenant such as we find here, would not be in violation of the covenant, since it would be an assignment by act and operation of law.  *  *  *

"But in this case, which is purely an equity receivership, the receiver was a mere *custodian* and therefore could not dispose of

this lease in the face of the covenant contained therein or *give a greater title than the corporation itself possessed, but could only convey such right, title, and interest as the corporation had in the res itself.* * * *

"It seems to me that in this case the court, in effect, substituted itself, through the appointment of its receiver as its agent, for the officers and managers of the corporation. It did not take the property of the company for distribution among its creditors, as in the case of receiverships in insolvency and trustees in bankruptcy, and that therefore the rights of the receiver rose no higher than the rights of the corporation itself, and so, what the corporation could not do with its property, the court, through its receiver, could not do." (Italics ours.)

Applying the logic and reasoning in this case to the case before us, we arrive at this situation: The title by operation of law passed to the administrator, not to be held by the estate as a mere custodian, but for the creditors, to be liquidated and paid upon their debts. The sale and transfer was not his act, but the act of the court, a judicial act, certainly involuntary and clearly by operation of law.

In the case of Seers v. Hind, 1 Ves. Jr. 294, it was held that the executors of a lessee may dispose of the lease as an asset of the testator, even though the lease contains a provision against alienation by the lessee.

The case of Walker v. Wadley, 124 Ga. 275, 52 S. E. 904, involved a lease containing the following covenant:

"And it is further covenanted that the said party of the second part [lessee], his heirs, executors and administrators, shall not be at liberty to assign this lease or sublet said premises, or any part thereof."

The court held that after the death of the lessee, his administrator could not assign the lease without breaking this covenant. In that case, however, the administrator simply sublet the premises for the remainder of the term in consideration of the payment of $150 over and above the rent provided for in the lease. This was purely a voluntary assignment, and a direct violation of the provisions contained in the covenant.

In the case of Miller v. Fredeking, 101 W. Va. 643, 133 S. E. 375, 46 A. L. R. 842, we find a discussion of the legal principles

involved. In that case there was an ordinary covenant against the assignment or subletting, and no mention of administrators, executors, or legal representatives of the lessee. The court in its discussion of the legal principles involved said:

"It is quite generally held that, where such transfer or assignment of the lease is made through involuntary bankruptcy proceedings, there is no violation of the covenant not to assign without the written consent of the lessor. [Citing cases.] But if the lease provides that the lessee's insolvency shall terminate the lease and give the lessor the right to re-enter, the trustee has no right or power to sell the lease for the benefit of the creditors. Jones on Landlord and Tenant, section 466. * * * There is no such provision in the lease under consideration. * * *

"In Bemis v. Wilder, 100 Mass. 446, the court said that an assignment by operation of law passed the estate, discharged of the covenant, to the assignee; and that was so where the transfer arose from voluntary proceedings in insolvency as distinguished from proceedings in invitum, where the proceeding was not colorable, and not merely for the purpose of effecting the transfer in fraud of the lessor, citing Taylor on Landlord & Tenant, section 408."

In the case In re Prudential Lithograph Co. (C. C. A.) 270 F. 469, the court said:

"A covenant against assignment or subletting of a lease without the written consent of the lessor is not breached by an assignment by operation of law in the event of the bankruptcy of the lessee."

It has been held that a covenant against assignment will not prohibit a subletting. Goldman v. Daniel Feder & Co., 84 W. Va. 600, 100 S. E. 400, 7 A. L. R. 246. This shows the tendency of the courts to strictly construe such restrictive covenants.

It was held in the case of Gazlay v. Williams, supra, that a sale by trustee in bankruptcy under order of court of his bankrupt's interest as lessee in a lease of real property is not a breach of a condition in such lease imposing a forfeiture if the lessee assigned the lease, where the lessee's interest should be sold under execution or other legal process without the lessor's written consent, and was not a violation of such covenant. The exact language of the covenant in said lease was as follows:

"Provided, however, that if said lessee shall assign this lease or underlet said premises, or any part thereof, or if said lessee's interest therein shall be sold under execution or other legal process, without the written consent of said lessors, their heirs or assigns, is first had, or if said lessee or assigns shall fail to keep any of the other covenants of this lease by said lessee to be kept, it shall be lawful for said lessors, their heirs or assigns, into said premises to re-enter, etc."

Chief Justice Fuller, of the United States Supreme Court, in discussing this question, said:

"The passage of the lessees' estate from Brown, the bankrupt, to Williams, the trustee, as of the date of the adjudication, was by operation of law, and not by the act of the bankrupt, nor was it by sale. The condition imposed forfeiture if the lessee assigned the lease or the lessees' interest should be sold under execution or other legal process without lessors' written consent.

"A sale by the trustee for the benefit of Brown's creditors was not forbidden by the condition and would not be in breach thereof. It would not be a voluntary assignment by the lessee, nor a sale of the lessee's interest, but of the trustee's interest, held under the bankruptcy proceedings, for the benefit of creditors. Jones, in his work on Landlord and Tenant, lays it down (section 466) that 'an ordinary covenant against subletting and assignment is not broken by a transfer of the leased premises by operation of law, but the covenant may be so drawn as to expressly prohibit such a transfer, and in that case the lease would be forfeited by an assignment by operation of law'. The covenant here is not of that character."

Chief Justice Fuller bases his holding on the case of Doe ex dem. Goodbehere v. Bevan, 3 Maule & S. 353, as applicable:

"The premises in question in this case, being a public house, were demised by Goodbehere to one Shaw for a term of years, and Shaw covenanted that he, his executors, etc., should not nor would, during the term, assign the indenture, or his or their interest therein, or assign, set, or underlet the messuage and premises, or any part thereof, to any person or persons whatsover, without the consent in writing of the lessor, his executors, etc. Proviso, that in case Shaw, his executors, etc., should part with his or their interest in the premises, or any part thereof, contrary to his covenant, that the

lessor might re-enter. Afterwards Shaw deposited this lease with Whitbread & Company as a security for the repayment of money borrowed of them; and, becoming bankrupt, and his estate and effects being assigned by the commissioners to his assignees, the lease was, upon the petition of Whitbread & Company, directed by the Lord Chancellor to be sold in discharge of their debt, and was, accordingly, sold to the defendant, and, without the consent of Goodbehere, assigned to the defendant by the assignees, and he entered, etc. The trial judge ruled that this was not a breach of the proviso not to assign without consent, etc., inasmuch as the covenant did not extend to Shaw's assignees, they being assignees in law; wherefore he directed a nonsuit. The rule to set aside the nonsuit was discharged on argument before Lord Ellenborough, Ch. J.; LeBlanc, J.; Bayley, J., and Dampier, J. (delivering concurring opinions) ; and Bayley, J., said:

" 'It has never been considered that the lessee's becoming bankrupt was an avoiding of the lease within this proviso; and if it be not, what act has the lessee done to avoid it? All that has followed upon his bankruptcy is not by his act, but by the operation of law, transferring his property to his assignees. Then shall the assignees have capacity to take it, and yet not to dispose of it? Shall they take it only for their own benefit, or be obliged to retain it in their hands, to the prejudice of the creditors, for whose benefit the law originally cast it upon them? Undoubtedly that can never be.' "

The nearest approach to this question by our own court is found in the case of Spinney v. Miller, 114 Iowa 210, 86 N. W. 317, 89 Am. St. Rep. 351. The decision turns on a section of the Code, but the discussion shows the leaning of our court. This was an action in equity to foreclose a mortgage which contained a provision: "It is expressly agreed that this mortgage is nonnegotiable, and is uncollectible in the hands of any other person than said association or its successors, or its duly authorized attorney or agents", and it was contended by the defendant that because of this provision the mortgage was not assignable and therefore plaintiff, as assignee, could not maintain the action. The plaintiff acquired said title by assignment from a receiver duly appointed for the corporation, mortgagee, upon a showing of its insolvency. The sale by the receiver was under order or authority of court, and the court said that notwithstanding the provision in the mortgage,

it was transferable under our statute (Code of 1897, section 3046). The court said:

"Furthermore, it is universally held that a provision restraining the assignment of such an instrument is not operative against an assignment *effected by law or through an order of court.* Where it is given force, it is restricted to voluntary alienation. 4 Kent, Commentaries, 128." (Italics ours.)

The case is cited with approval in the case of Blank v. Independent Ice Co., 153 Iowa, 241, at page 248, 133 N. W. 344, 43 L. R. A. (N. S.) 115. The question in the latter case arose over the power of the court to order its receiver to sell an option contract, which is likewise applicable to the case at bar, for this lease also contains an option to re-lease for another year on the same terms. We said:

"This court has held that a mere option to purchase real estate creates no interest in the land that is subject to execution. Sweezy v. Jones, 65 Iowa 272, 21 N. W. 603. And in Myer v. Stone & Son, 128 Iowa 10, 102 N. W. 507, 111 Am. St. Rep. 180 it was held that an option which was expressly limited to the party to whom it was given could not be assigned. There is also language in the opinion warranting the conclusion that no purely option contract can be voluntarily assigned. *But there is a clear distinction between the voluntary assignment of such a contract and an assignment by the court for the purpose of protecting the creditors of an insolvent estate.* In the Myer case, we said that the privilege of buying property at a certain price is often of much value, and this must be true; for, where land values are rapidly increasing, the right to purchase at a given price within a specified time is often of great value. Many men in this state alone have made fortunes out of such options within the past few years. If an option has, in fact, a value, we see no sound reason why it may not be sold and assigned under order of the court for the benefit of the creditors of an insolvent estate, even though it may not ordinarily be assigned by the party to whom it was originally given." (Italics ours.)

Under the lease in the instant case, had the lessee, during his lifetime, been adjudged a bankrupt or had a judgment creditor levied upon and sold this lease, in either event under the better weight of authority the covenant in this lease would not have been

broken. In such event, it would have been an act by operation of law, there being no express, specific words especially applicable in the lease against involuntary assignments. This being true, can it be said that what the creditors could do in his lifetime, the law will not permit the creditors to do after his death, to wit, subject his leasehold interest to payment of the bona fide indebtedness of lessee's creditors? Therefore, in accordance with what we believe to be sound in principle, and in line with the greater weight of authority, it is the holding of this court that the administrator of this insolvent estate is an officer of the court, or arm of the law, by means of which the property of the deceased is conveyed to or reached by the creditors, and that the assignment under order of court, under the circumstances disclosed in this case, is an involuntary assignment by operation of law, and that the lease in question is not so drawn as to expressly prohibit such a transfer.

It therefore follows that the order and judgment of the trial court should be, and the same is hereby, affirmed.—Affirmed.

ANDERSON, C. J., and ALBERT, MITCHELL, KINTZINGER, DONEGAN, and POWERS, JJ., concur.