CARL F. STRUB, Appellee, v. SCHMIDT-KURZ IMPROVEMENT COMPANY, Appellee; PAUL W. KURZ, Appellant.

No. 46439.

·JUNE 6, 1944.

REHEARING DENIED SEPTEMBER 23, 1944.

Will J. Hayek and Arthur O. Leff, both of Iowa City, for appellant.

Dutcher, Ries & Dutcher, of Iowa City, for appellee.

MILLER, J.— This is an appeal from two intermediate orders entered March 4, 1943, and July 1, 1943, respectively. Both parties appealed forthwith on the latter day. Pursuant to Rule 1 of the Rules of Civil Procedure and Rule 1 of the domestic rules of this court, both effective July 4, 1943, this appeal is governed by the statutes and rules in effect prior to July 4, 1943. Since the orders appealed from involve the merits and materially affect the final decision herein, the appeals were properly perfected pursuant to section 12823, Code, 1939. The questions presented for our decision arose pursuant to a stipulation of the parties whereby the court was to determine certain questions in the case and to retain jurisdiction of the cause for future determination of other questions. A decision of the questions presented by defendant's appeal makes it unnecessary for us to consider or decide the questions presented by plaintiff's appeal.

Plaintiff's petition asserts that on December 23, 1936, the defendant Schmidt-Kurz Improvement Company had 759 shares of common stock outstanding, one third of which, or 253 shares, were owned by G. W. Schmidt, and on that date the shares owned by G. W. Schmidt were levied on to satisfy a judgment against him; on that day, and prior to any sale by the sheriff, a settlement was made with the judgment creditor for $12,650, of which $2,650 was paid by plaintiff, Strub, and $10,000 was paid by defendant Kurz, and a written agreement was executed by Kurz, Strub, Schmidt, and Schmidt's wife providing for acquisition of Schmidt's stock by Kurz and for the repurchase of Schmidt's stock from Kurz at any time prior to December 23, 1941; Kurz also paid to Schmidt $1,800 in monthly installments of $100; Schmidt's wife died testate in June 1938, and Schmidt died in July 1938; prior to Schmidt's death, Agnes Strub was appointed guardian for him and, as such guardian, with authority from the court, on July 9, 1938, sold and assigned to plaintiff, Carl Strub, Schmidt's interest in the written contract of December 23, 1936, with Kurz; on December 17, 1940, Strub undertook to exercise the

option to redeem and repurchase Schmidt's stock from Kurz but Kurz refused to permit him to do so and denied that he was entitled to do so; Strub tenders the amount necessary for such redemption. Other allegations of the petition are not material to the questions now before us. The prayer asked, among other things not material here, that defendants permit plaintiff to redeem Schmidt's stock from Kurz.

The contract of December 23, 1936, referred to in the petition, contained the following provisions:

"The party of the first part [Kurz] further agrees to and hereby grants to G. W. Schmidt and Augusta Schmidt the right to .at any time within five (5) years from the date hereof purchase said two hundred fifty-three shares of stock in the Schmidt-Kurz Improvement Company upon payment of the sum of Ten Thousand ($10,000.00) Dollars plus such other sums as may be advanced in monthly installments not exceeding a total of Two Thousand ($2,000.00) Dollars as provided above, together with interest at the rate of 3 per cent.

"Upon the exercise of said option and the payment by the parties of the second part of said sums, with interest, the party of the first part agrees to sell and re-convey to the said parties of the second part said two hundred fifty-three shares of stock in the Schmidt-Kurz Improvement Company.

"The parties of the second part hereby consent to the foregoing arrangement and acknowledge that they have been advised as to its contents and the same is satisfactory and agreeable to them.

"This contract is not assignable."

Defendants filed a motion to dismiss the petition, asserting that the contract was a personal right limited to G. W. Schmidt and his wife, was not assignable, and that the purported assignment to plaintiff was a nullity. On March 4, 1943, the court held that section 9452, making certain instruments assignable regardless of a provision therein against assignment, is not applicable to this contract, but that it would be presumed from the allegations of the petition that the guardianship of Schmidt was in good faith, that section 12630 provides that an insolvent guardianship may be administered as

an insolvent estate, that the contract does not explicitly prohibit assignment by a guardian, the presumption is that the court approved the assignment to protect the guardianship estate, that the assignment was involuntary and valid. The motion to dismiss was overruled and the defendants filed answers.

The answer of the Schmidt-Kurz Improvement Company offered to do whatever was necessary should the court find the assignment valid. The answer of defendant Kurz asserted that the right of redemption asserted by plaintiff was a personal right of G. W. Schmidt and Mrs. Schmidt, could not be assigned, and the purported assignment to plaintiff was a nullity; that the purported guardianship was voluntary and purely custodial, was collusive, was obtained by plaintiff for the purpose of securing the assignment of the contract herein, the guardian had no greater rights than the ward, the purported assignment was a nullity, and the action should be dismissed.

Trial was had under a stipulation that the proceedings should be limited to a determination of the question of the validity of the assignment and plaintiff's rights thereunder and reserving all other questions for future determination. The parties stipulated most of the facts stated in the petition except those allegations which asserted the legal effect of such facts. The entire guardianship file was introduced in evidence together with certain correspondence between plaintiff and Kurz. Certain parts of the file in the estate of G. W. Schmidt, deceased, were also introduced.

The guardianship file shows that on July 1, 1938, G. W. Schmidt filed a verified application for the appointment of a guardian to manage his property, asserting that he was seventy-seven years old, in poor health, confined to his home, his affairs were somewhat involved and required attention which he could not give them. He asked that Agnes Strub be appointed guardian of his person and property. The order appointing her was entered forthwith. The guardian's inventory, signed July 9, 1938, showed the only asset to be the contract for the redemption, valued at $500. On the same day, the guardian filed an application to sell said asset, alleging that she was without funds for the care of her ward, that it would be

for the best interests of the ward to sell the contract. She asked that appraisers be appointed and that she be authorized to sell the ward's equity for not less than the appraised value. Appraisers were appointed forthwith, a commission was issued to them, and they made report fixing the value at $500. A guardian ad litem was appointed for the ward. The guardian reported the sale to Strub and on July 9, 1938, the court entered an order approving the sale and assignment. The final report of the guardian, filed August 3, 1938, showed receipt of $500 from Strub and the expenditure thereof for guardian's bond, services of a nurse, funeral expenses, attorney's fees, and costs, with a balance on hand of $45.50.

The court file in the estate of G. W. Schmidt shows that he died on July 9, 1938, leaving his son, Paul W. Schmidt, as his heir; Agnes Strub was appointed administratrix on July 14, 1938; the inventory showed cash of $45.50 and a real-estate equity of $3,100, debts estimated at $8,500; claims were filed approximating $13,500; part of the realty was lost by foreclosure and the rest was sold on execution. The final report shows that $45.50 was received from the guardian, $53.30 was expended for bond and court costs, no other funds were handled.

Defendant Kurz testified as a witness for plaintiff to various stock transactions in the company, the effect of which was that, if the Schmidt option were exercised, the stock formerly in his name would be reissued and a mortgage of $10,000 on the Paul-Helen Building in Iowa City, the principal asset of the company, would be released.

Dr. F. L. Love testified as a witness for defendant that G. W. Schmidt died at 8:40 p. m. July 9, 1938, of hardening of the arteries. On that day he was mentally incompetent, but he may have had lucid intervals prior thereto.

Plaintiff testifed as a witness for defendant that the guardianship was opened July 1, 1938, as shown by the record. He knew Schmidt was very sick on July 9th, the day he died. The assignment of the contract was completed on that day. Strub's aunt, Agnes Strub, the guardian, who was taking care of Schmidt, Strub's uncle, was desperately in need of money; Strub had been advancing her some money; he borrowed $500 and purchased an assignment of the contract for said sum; the

figure of $500 was arrived at through Mr. Summerwill, of the First National Bank, and Joe Otto, attorney for Agnes Strub. The purpose of the guardianship was to permit an order for transfer of the stock as that was the only asset in the estate. In purchasing the option for $500, Strub considered that it was worth more than that but he took into consideration the fact that he had $2,650 in the stock.

On July 1, 1943, the court reaffirmed its ruling of March 4, 1943, and held that the well-pleaded facts, sufficient for recovery under said ruling, were established by the evidence; that defendants had failed to establish that the assignment of the contract was collusive and for the purpose of defrauding defendants; the contract does not specifically covenant against assignment or transfer by operation of law and such a transfer does not violate the contract; to permit redemption does not prejudice defendants or any innocent party. The court found that plaintiff was entitled to exercise the right of redemption of the stock and entered a decree to that effect. Both parties appeal from the two orders of court, entered as aforesaid on March 4, 1943, and July 1, 1943. Plaintiff's appeal, which seeks reversal of that part of these two orders which adjudicates that section 9452, Code, 1939, is not applicable to the contract before us, need not be considered or decided because a determination of defendant's appeal, which seeks reversal of the court's holding that the guardian's sale was valid, is decisive of the case.

I. Defendant's first assignment of error is that the court erred in holding that the guardian's sale was an involuntary assignment by operation of law, freed from the restriction against assignment. There is no merit in the contention. The guardian's sale was a judicial sale by authority of the court and the restriction against assignment is not applicable thereto.

The guardian was properly appointed by the court on application of the ward, pursuant to section 12617, Code, 1939. This section is contained in chapter 541 of the Code. In the same chapter appears section 12630, which provides as follows:

"If the estate of such person is insolvent, or will probably be insolvent, the same shall be settled by the guardian in like manner, and like proceedings may be had, as are re-

quired by law for the settlement of the insolvent estate of a deceased person.''

The record shows and the court apparently found that on July 1, 1938, when the guardian was appointed, the ward was insolvent. The equity of redemption in the contract with Kurz was his only asset that could be liquidated. The guardian was desperately in need of money to pay for care of her ward and to provide for a decent interment in the event of death, which was then imminent. The money which was made available by the sale was so used. The legal steps necessary for a valid judicial sale were taken. The matter was all made of record. No direct attack is shown to have been made upon these judicial proceedings, although Strub permitted over two years to elapse before he undertook to exercise the right of redemption thus acquired by him. The attack now made upon the guardian's sale is a collateral one. Under the record before us, the time during which the redemption could be exercised has now expired. Were a direct attack now made upon the validity of the guardian's sale by creditors of the deceased ward it would be futile if successful because the right of redemption would have expired. Unless Strub is entitled to exercise such right it cannot now be exercised by anyone. These facts have an appeal to a court of equity.

Defendant contends that the guardianship was voluntary and purely custodial, so that the rule that restrictions on assignments are not applicable to involuntary assignments by operation of law unless specifically mentioned in the prohibition is not controlling. The record shows that the guardianship was voluntary in its inception. However, the ward's insolvency made it more than a purely custodial one. Section 12630, above quoted, so provides. This is recognized by us in In re Estate of Simpson, 225 Iowa 1194, 1197, 1198, 282 N. W. 283, 285, 119 A. L. R. 1208, wherein we state:

''The statutes providing for the appointment of guardians for the property of incompetents do not contemplate the disposition of the ward's assets except in instances wherein the ward's estate is insolvent, or probably will be insolvent, as is provided for in section 12630 of the Code. Except in instances provided for in section 12630 of the Code, the statutes simply

contemplate that the business affairs of the ward shall be conducted by a guardian in lieu of the ward himself on account of the ward's incompetency.''

In the case of In re Estate of Simpson, above quoted from, the ward's estate was solvent, so that section 12630 did not apply. Here it was insolvent, the section is applicable, the guardian had the power, if authorized by the court, to sell such property as might be necessary to provide for the ward's needs. Such a sale of property was a judicial sale and the transfer was by operation of law.

In the case of Snyder v. Bernstein Bros., 201 Iowa 931, 208 N. W. 503, this court held squarely that a provision against the assignment of a lease without the consent of the lessor was enforceable notwithstanding the provisions of Code section 9452. However, in In re Estate of Owen, 219 Iowa 750, 764, 765, 259 N. W. 474, 481, where the lease did not contain an express prohibition against assignment by operation of law, this court held that the administrator of the insolvent estate of the deceased lessee, acting pursuant to an order of court, could assign the lease notwithstanding a general provision against assignment without the written consent of the lessor, stating, at the close of the opinion, as follows:

''Under the lease in the instant case, had the lessee, during his lifetime, been adjudged a bankrupt or had a judgment creditor levied upon and sold this lease, in either event under the better weight of authority the covenant in this lease would not have been broken. In such event, it would have been an act by operation of law, there being no express, specific words especially applicable in the lease against involuntary assignments. This being true, can it be said that what the creditors could do in his lifetime, the law will not permit the creditors to do after his death, to wit, subject his leasehold interest to payment of the bona fide indebtedness of lessee's creditors? Therefore, in accordance with what we believe to be sound in principle, and in line with the greater weight of authority, it is the holding of this court that the administrator of this insolvent estate is an officer of the court, or arm of the law, by means of which the property of the deceased is conveyed to or

reached by the creditors, and that the assignment under order of court, under the circumstances disclosed in this case, is an involuntary assignment by operation of law, and that the lease in question is not so drawn as to expressly prohibit such a transfer."

Defendant concedes that, under the rule above quoted, Agnes Strub, in her capacity as administrator of Schmidt's insolvent estate, could have made a valid assignment of the contract in question. We hold that, under section 12630, she had the same power as guardian of Schmidt's insolvent estate during his lifetime.

II. Defendant also asserts that the court erred in refusing to hold that the guardian's sale was invalid because procured by collusion and illegal proceedings. There is no merit in this contention. It should be borne in mind that this is a collateral attack on the probate proceedings. The court properly held that the presumption obtains that the proceedings were regular, in good faith, and according to law. Defendant suggests that the sale was a ruse to defraud Schmidt's creditors. If this were so, it is strange that the record before us shows no attack upon the sale by such creditors, though Strub waited over two years after the sale before he attempted to exercise the right of redemption assigned to him. Fraud is never presumed. It must be proved. The proof thereof is lacking here.

Defendant contends that the sale was collusive between the guardian and plaintiff and fraudulent as to defendant. It certainly was not collusive as to Schmidt, because, when made, he was incompetent. To say that it was fraudulent as to defendant is to deny the testimony of plaintiff, called by defendant, that the guardian was desperately in need of money with which to provide Schmidt the very things which were provided him from the proceeds of the sale. The trial court saw and heard the witness. It was satisfied that plaintiff and the guardian acted in good faith. We see no occasion to hold otherwise.

The cause is—Affirmed.

All JUSTICES concur.